**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | |
|---|---|
| KAREN SAM and ROBERT SAM, | |
| Plaintiffs, | Case No. 3:25-CV-50219 |
| v. | |
| | Hon. Iain D. Johnston |
| DEKALB HOUSING AUTHORITY, et al. | |
| Defendants. | **JURY TRIAL DEMANDED** |

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant, HOUSING AUTHORITY OF THE COUNTY OF DEKALB ("HACD"), by its attorney Allie M. Burnet of Best, Vanderlaan & Harrington, hereby moves this Court for dismissal of Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support thereof, Defendant states as follows:

**SUMMARY OF THE PLEADINGS**

Plaintiffs, Karen and Robert Sam, have filed a six count Complaint against Defendant HACD, as well as a number of co-Defendants, generally alleging that HACD engaged in conduct which they contend resulted in their eviction by their private landlord, who is not a named party to this lawsuit. *See Complaint, attached hereto as Exhibit A.* Plaintiffs' Complaint alleges that Plaintiff Karen Sam and their minor daughter are disabled, that Plaintiffs were participants in HACD's Housing Choice Voucher (HCV) program, and that HACD administers the HCV program in DeKalb County. *Ex. A.* Plaintiffs allege they were successful in defending a DeKalb County eviction claim filed by their private landlord (BKA Holding), after which they contend HACD was required by HUD regulations to process a portability request to transfer their voucher to another jurisdiction. *Ex. A.* Plaintiffs contend that Plaintiffs made repeated requests to HACD to port their

1

voucher another jurisdiction, but HACD allegedly failed to process their request. *Ex. A.* Plaintiffs contend that an HACD employee's delay in processing Plaintiffs' portability request resulted in third party BKA Holding (through owner Melissa Mobile and its attorney) filing another eviction action against Plaintiffs which resulted in Plaintiffs' eviction from the third-party property subsidized through HACD's voucher program. *Ex. A.* Plaintiffs contend that during this time the Town of Sycamore allowed condition issues to persist at the private property Plaintiffs leased, and that the condition of the premises was leveraged to support a second eviction filed against Plaintiffs. *Ex. A.* Plaintiffs contend that after they were evicted from the property, Plaintiffs lost the voucher administered by Defendant HACD, resulting in damages. *Ex. A.* Each of Plaintiffs' six counts asserted against Defendant HACD are subject to dismissal as a matter of law for failure to state a claim. Plaintiffs' prayers for punitive damages and attorneys' fees must also be stricken as to any count sustained by this Court.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a motion to dismiss under Rule 12(b)(6), a court accepts as true all the well-pleaded allegations and draws all reasonable inferences in the pleader's favor. *Esco v. City of Chi.*, 107 F.4th 673, 678 (7th Cir. 2024). At the same time, the district court is "free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim.'" *Id.* (quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)). The court may also take judicial notice of matters of public record without converting the Rule 12(b)(6) motion into a

2

motion for summary judgment. *See Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (citing *Ennega v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012)).

## <u>ARGUMENT</u>

**A.    Counts I-III Must Be Dismissed for Failure to State a Cognizable Claim under the Fair Housing Act, Rehabilitation Act, and Americans with Disabilities Act**

Plaintiffs' Complaint alleges violations of the FHA (Count I), the Rehabilitation Act (Count II), and ADA (Count III). Each count pleads different legal theories, including disparate impact, "direct" discrimination, and retaliation in Count I, and failure to accommodate in Counts II-III. But these different theories overlap and apply across these statutes. *See Valencia v. City of Springfield*, 883 F.3d 959, 967 (7th Cir. 2018). The Seventh Circuit has held that a "plaintiff may prove a violation of the FHA, ADA, or Rehabilitation Act by showing: (1) disparate treatment; (2) disparate impact; or (3) a refusal to make a reasonable accommodation." *Id.* Moreover, "[f]or each respective theory, the same analysis generally applies under all three statutes." *Id.* Regardless of which statute applies, Plaintiffs' Complaint must be dismissed for failure to state a cognizable claim.

### 1.    Plaintiffs' Fail to State a Plausible Disparate-Impact Claim Because They Do Not Allege HACD's Practices Disproportionately Impact People with Disabilities

Count I of Plaintiffs' Complaint alleges that the defendants' actions had a disparate impact on them in violation of the FHA. The same analysis of a disparate-impact claim is applied under FHA, ADA, and the Rehabilitation Act. *Valencia*, 883 F.3d at 967. Plaintiffs herein allege discriminatory impact on Karen Sam and the minor child, as individuals with disabilities, based on HACD's alleged refusal to process their portability request subsequent to the first eviction action filed against them by their private landlord (not HACD). "To state a claim for a disparate impact, a plaintiff must allege that the defendant's practices have a 'disproportionately adverse effect' on the protected class and 'and are otherwise unjustified by a legitimate rationale.'" *Trimuel*

3

*v. Chicago Housing. Authority*, 695 F. Supp. 3d 972, 982 (N.D. Ill. 2023) (quoting *Tex. Dep't of Hous. and Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015)); *see also Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). "A plaintiff sufficiently pleads disparate impact under the FHA by alleging: (1) a statistical disparity; and (2) that the defendant maintained a specific policy; and (3) such policy caused the disparity." *Trimuel*, 695 F. Supp. 3d at 982. "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Inclusive Communities*, 576 U.S. at 543.

In *Inclusive Communities*, the Supreme Court set a high bar for stating a disparate-impact claim under federal anti-discrimination laws, holding that a plaintiff challenging a developer's construction of a new building in one location rather than another cannot easily allege that this decision was a policy causing a disparate impact "because such a one-time decision may not be a policy at all." 576 U.S. at 543. Applying principles from *Inclusive Communities*, the *Trimuel* court dismissed an FHA sex-based disparate impact claim because plaintiffs provided no evidence and pleaded no facts demonstrating the female plaintiffs were disproportionately impacted by the subject policies, or which connected any disparity to those policies. *Trimuel,* 695 F. Supp. 3d at 982. Here, the same result is required, and Plaintiffs' disparate impact claims are subject to dismissal for failure to state a claim. Plaintiffs do not allege a statistical disparity between people with disabilities compared to those without disabilities in the processing of portability requests, nor do they allege that HACD maintained any specific policy causing such a disparity. Plaintiffs have likewise failed to allege facts to support the "robust causal connection" required at the motion to dismiss stage. *Id.* at 982; *Roberts v. City of Chi.*, 817 F.3d 561, 566 (7th Cir. 2016) (failure to state a claim where complaint alleged discrimination against the plaintiffs but not disabled

applicants generally, and lacked factual content suggesting the City's testing process caused a relevant and statistically significant disparity against disabled applicants). Accordingly, Plaintiffs' disparate impact claims asserted in Counts I-III must be dismissed for failure to state a claim.

### 2. Plaintiffs Fail to State a Claim for "Direct" Discrimination for Failure to Allege HACD's Purported Delays or Conduct Were Because of Disability

Plaintiff's "direct discrimination" claims pled against HACD in Counts I and II are also subject to dismissal based on Plaintiffs' failure to sufficiently plead a disability discrimination claim under the subject statutes. To adequately plead disability discrimination claims against HACD, Plaintiffs must allege facts supporting their claim that HACD delayed processing of their portability request ***because of*** the household members' disability. *See Wilson v. Warren Cty.*, 830 F.3d 464, 467 (7th Cir. 2016). Here, Plaintiffs fail to plead that HACD's inaction was because of Karen or the minor child's alleged disability and the direct discrimination claims must be dismissed. First, Plaintiff does not allege that HACD had knowledge of any qualifying disabilities. Even if Plaintiffs did so, however, the allegations fail to connect HACD's action or lack thereof to either household member's disability. Instead, Plaintiffs claim that HACD stalled the portability request to allow Plaintiffs' landlord (Mobile) and her attorney to bring a new eviction case against them. Although HACD denies such allegations, Plaintiffs' allegations suggest HACD was motivated by a desire to favor and/or assist Plaintiffs' landlord and its attorney, rather than motivated by any individual's disability status. In so doing, Plaintiffs fail to meet their burden and instead have pled facts admitting that a HACD "would have behaved the same regardless of the disability." *Wilson*, 830 F.3d at 468. The Seventh Circuit has consistently held that the fact of a household members' disabilities alone do not sufficiently allege that a defendant "targeted the family for that reason." *Graham v. Herron Prop. Mgmt. LLC*, No. 22-2883, 2023 WL 3581958 at *1 (7th Cir. 2023)(Plaintiff who alleged she made multiple requests for her landlord to perform

repairs and authorize a service animal failed to allege disability discrimination). Here, as in *Graham,* Plaintiffs' "unadorned assertions of discrimination do little more than state legal conclusions, which are insufficient to claim plausibly that [HACD] took any actions because of protected characteristics … whether we look to the Fair Housing Act or to other anti-discrimination laws that [the plaintiff] discusses." *Id.* at \*1-2*.* (citing *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022)). Accordingly, Plaintiffs' direct discrimination claims in Counts I-III are also subject to dismissal for failure to sufficiently plead those claims.

### 3. Count I Fails to State a Plausible Retaliation Claim Under the FHA

Plaintiff's FHA retaliation claim in Count I is also subject to dismissal based on Plaintiffs' failure to plausibly plead facts to support any claimed "protected activity." Section §3617 prohibits retaliation against a person for exercising his or her rights under §3603-§3606 thereof. *See 42 U.S.C. § 3617*;*Davis v. Fenton*, 857 F.3d 961, 963 (7th Cir. 2017). To state a claim for retaliation, Plaintiffs must allege: (1) they engaged in protected activity related to their statutory rights to be free from illegal housing discrimination; (2) they suffered an adverse action; and (3) there was a causal connection between the two. *See Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018). Plaintiffs fail to plead facts supporting any alleged protected activity related to their FHA rights, let alone that they did so relative to their participation in HACD's voucher program, so their retaliation claims are subject to dismissal as a matter of law. Plaintiffs allege only that HACD's employee purportedly delayed processing of their portability request in retaliation for Plaintiffs' appeal of a 2023 eviction action filed against Plaintiffs by a private landlord. Plaintiffs have not alleged the prior eviction action asserted discrimination claims against HACD based on disability or any other right protected by the subject statutes.[1] Further,

---

[1] In the 2023 eviction case, Illinois' Second District granted a motion to vacate the trial court's order entering an eviction judgment against Plaintiffs as an abuse of discretion. *See BKA Holding,*

6

Plaintiffs' threadbare allegations that Karen Sam and their minor child are disabled are plainly insufficient to establish they engaged in "protected activity" under any statute. *Wetzel*, 901 F.3d at 868 ("Like all anti-retaliation provisions, [the FHA's anti-retaliation provision] provides protections not because of who people are, but because of what they do."). Because Plaintiffs cannot plausibly allege the prior eviction action between them and their private landlord was "protected activity," and because they fail to plead facts supporting any "protected activity" relative to Defendant HACD, Plaintiffs fail to meet their prima facie burden. *See Fincher v. S. Bend Hous. Auth.*, 612 F.Supp.2d 1009, 1024 (N.D.Ind. 2009), *aff'd in part sub nom. Fincher v. S. Bend Heritage Found.*, 606 F.3d 331 (7th Cir. 2010) (dismissing FHA retaliation claim for failure to state a claim because a prior lawsuit against the public housing authority raised no matters or rights protected by the FHA). Because Plaintiffs fail to plead a prima facie case of retaliation against HACD, Count I must also be dismissed as a matter of law.

### 4. Plaintiffs Fail to Sufficiently Plead a Failure to Accommodate Claim

Counts II and III of Plaintiffs' Complaint allege that by delaying processing of their portability request, HACD failed to provide reasonable accommodation to Plaintiffs and to ensure equal housing access, in violation of the Rehabilitation Act (Count II) and ADA (Count III). Plaintiffs' failure to accommodate claims must be dismissed under both statutes. To state a claim for failure to provide a reasonable accommodation, Plaintiffs must allege: (1) they are disabled; (2) defendant was aware of the disability; and (3) the defendant failed to reasonably accommodate their disability. *Trimuel,* 695 F. Supp. 3d at 981; *Valencia,* 883 F.3d at 967. A public entity must reasonably accommodate a person with a disability "by making changes in rules, policies, practices

---

*LLC v. Sam*, 241 N.E.3d 1014, 1016 (Ill. App. Ct. 2023). The appellate court's order was wholly unrelated to any alleged action or inaction by this Defendant HACD.

or services as is necessary to provide that person with access to housing that is equal to that of those who are not disabled." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003). Plaintiffs' Complaint does not plausibly allege that HACD failed to reasonably accommodate the alleged disabilities when it purportedly delayed the portability request. As an initial matter, Plaintiffs have not even alleged the most basic requirement to support their claim that a request for accommodation was ever made to HACD related to any alleged disability. The first issues in any such claim is whether the plaintiff requested an accommodation, and whether that accommodation is reasonable. *Oconomowoc Residential Programs v. City of Milwaukee,* 300 F.3d 775, 784 (7th Cir. 2002). Because Plaintiffs do not allege that any request for accommodation was ever submitted (let alone facts to support that it was reasonable), Plaintiffs' failure to accommodate claims stop there and are subject to dismissal as a matter of law. Even if the Court concludes that Plaintiffs have plausibly alleged a request was made, which is denied, Plaintiffs' failure to accommodate claims fail to plead facts suggesting any requested accommodation was not only reasonable but that the accommodation requested would have ameliorated the effects of Plaintiffs' claimed disabilities. *See Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995). It is well-settled that the duty of reasonable accommodation is confined to rules, policies, practices, or services that harm people with disabilities by reason of their disability. *Good Shepherd*, 323 F.3d at 561. Plaintiffs do not allege what HACD could have done to accommodate their alleged disabilities, and any alleged failure by HACD to process their portability request does not support a plausible failure to accommodate claim because the delay is not alleged to have not hurt Plaintiffs "by reason of their handicap" rather than "by virtue of what they have in common with other people, such as a limited amount of money to spend on housing." *Good Shepherd*, 323 F.3d at 561. Any participant in HACD's program could raise similar allegations that delayed

processing of a portability request impacted their ability to port out to another jurisdiction, and Plaintiff's allegations as pled are insufficient to proceed on a failure to accommodate theory. *Id.* at 561. (plaintiff could not proceed on reasonable-accommodation theory where they did not allege that rules or actions of defendant affected disabled persons differently than others). Plaintiffs' failure to accommodate claims raised in Counts II-III must accordingly be dismissed.

**B.** **Counts IV and V Must Be Dismissed Because Plaintiffs Fail to Plead a Plausible Claim Against HACD Pursuant to §1983**

### 1. Plaintiffs Fail to Allege a Cognizable *Monell* Claim Against HACD

Even if this Court were a proper forum for challenging the administrative loss of housing assistance, which is denied (*see infra*), Plaintiffs' constitutional allegations fail to state a claim against Defendant HACD. "[A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 (1978). That is, the *Monell* doctrine provides that HACD cannot be held liable for the acts of its employees on a *respondeat superior* theory. *Monell v. Dept. of Soc. Servs. Of City of New York,* 436 U.S. 658, 691(1978); *Ray v. Wexford Health Sources, Inc.,* 706 F.3d 864, 866 (7th Cir. 2013). To plead a cause of action against HACD pursuant to §1983, Plaintiff must allege a constitutional violation has occurred, plus either: (i) a written policy; (ii) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (iii) the act of a "final policymaker." *Gonzalez v. Vill. of W. Milwaukee,* 671 F.3d 649, 664 (7th Cir. 2012). A complaint will only survive a motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In the *Monell* context, a plaintiff is required to '"plead…factual content that allows the court to draw the reasonable inference' that the [municipal entity] maintained a policy, custom, or practice" that resulted in the deprivation of a constitutional right. *McCauley v. City of Chicago*, 671 F.3d 611,

9

616 (7th Cir. 2011), *citing Iqbal*, 556 U.S. at 678. Here, Plaintiffs allege only a delay in processing a request for portability by one of HACD's employees, failing to plead facts to support any allegation that the delay resulted from a written policy, custom or practice, or that said actions were taken against Plaintiffs by a final policymaker. Plaintiffs allege only an employee of HACD acted contrary to certain HUD regulations requiring prompt action when she purportedly delayed the processing of the portability request. Because "misbehaving employees are responsible for their own conduct" and "units of local government are responsible only for their policies rather than misconduct by their workers," Plaintiffs have not stated a cognizable §1983 claim against HACD. *Est. of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007); *see also Simpson v. Brown Cty.*, 860 F.3d 1001, 1005–06 (7th Cir. 2017) (a local government "cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by their employees"). Plaintiffs' Complaint alleges only the purported acts of HACD's employee, distinguishable from acts of HACD itself, and, therefore, the Complaint fails to allege any facts that could establish HACD's liability under § 1983. *See Est. of Sims*, 506 F.3d at 515. Accordingly, Plaintiffs have failed to plausibly plead a *Monell* claim against HACD and Counts IV and V are subject to dismissal as a matter of law.

**2. Plaintiffs Boilerplate Effort to Plead a Custom Policy or Practice to Support a *Monell* Claim is Unavailing**

As set forth above, Plaintiffs' claims in Counts IV and V against HACD require Plaintiffs to allege an official custom, policy or practice that was the "moving force" behind their alleged deprivation of due process. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). In Count V, Plaintiffs assert (without elaboration) that HACD "had policies, customs, or failures in supervision that led to the harm alleged" and that HACD acted with deliberate indifference to known, serious risks to Plaintiffs' safety, health, and housing rights. But "conclusory allegations and formulaic

recitations of the elements of a claim aren't enough." *Petropoulos v. City of Chi.*, 448 F. Supp. 3d 835, 840 (N.D. Ill. 2020) (citing *Estate of Sims*, 506 F.3d at 514 and *Iqbal*, 556 U.S. at 678–79). Plaintiffs' "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 680–81).

In *Petropoulos*, an inmate sent a FOIA request to the City of Chicago, and the City mistakenly sent him the plaintiffs' private documents. 448 F. Supp. 3d at 837. They sued the City under *Monell* claim a violation of their substantive due process rights. *Id.* at 837–39. The district court ruled that plaintiffs therein failed to sufficiently plead a *Monell* claim because "the complaint rests entirely on their own personal experiences" and "no other examples of the City releasing the wrong information to the wrong recipients." *Id.* at 841. The Complaint was subject to dismissal, the court concluded, because "[a]fter describing what happened to the Plaintiffs, the complaint merely recites the generic elements of a *Monell* claim." *Id.* The district court also noted that to allege a policy or custom under *Monell* there must be "more than one instance" of alleged wrongdoing, and "even three instances may not be sufficient in some cases." *Id.* (quoting *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)). Similarly, in *Powell v. Chicago Housing Authority*, the district court held plaintiffs failed to plausibly allege that the Chicago Housing Authority had a widespread practice of denying Section 8 recipients' informal hearings before terminating their benefits. *Powell v. Chi. Hous. Auth.*, No. 24 C 12068, 2025 WL 1795104, at *7 (N.D. Ill. June 30, 2025). There, the plaintiffs provided "no examples of similar incidents to support their personal account." *Id.*; *see also Chaney v. Chi. Hous. Auth.*, 2024 WL 4751208, at *1 (7th Cir. Nov. 12, 2024) (affirming dismissal in a nearly identical case). Here, aside from threadbare conclusions, Plaintiffs have not alleged facts to support the existence of any HACD

11

policy, custom or practice resulting in an alleged violation. The Complaint does not even identify any alleged policy, custom, or practice of HACD to provide notice of the basis for a purported *Monell* claims. *See McCauley*, 671 F.3d at 617. Instead, like the plaintiffs in *Petropoulos, Powell,* and *Chaney,* Plaintiffs merely explain what allegedly happened to them but fail to identify a pattern of similar incidents or other factual allegations to allow an inference that HACD had some kind of unconstitutional policy or practice. *See id.* at 618. Dismissal of Counts IV and V is accordingly required.

> ### 3. Plaintiffs' §1983 Claims Must Be Dismissed Because Redress for The Claims Raised Therein Are Provided by the FHA and Related Statutes

Regardless, the §1983 claims asserted in Counts IV and V must be dismissed because redress for any potential claims made by Plaintiffs are exclusively provided by the remedial mechanisms provided by the ADA, Rehabilitation Act, and/or FHA. While a Plaintiff may bring a §1983 suit to enforce rights defined by federal statutes, an exception exists when a comprehensive remedial scheme evinces a congressional intent to foreclose resort to Section 1983 for remedy of statutory violations. *Alsbrook v. City of Maumelle, 184 F.3d 999,1011(8th Cir. 1999)(citing Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n.,* 453 U.S. 1, 10-11 (1981); *See also Hopkins v. Springfield Housing Auth.,* 2014 WL 3583857 (C.D. Ill. July 21, 2014). The aforesaid statutes, but particularly the FHA, prohibit discrimination and provide a private right of action for individuals who have allegedly been denied their rights under the FHA. 42 U.S.C. § 3604(a), 42 U.S. C. §3616. Because there is a comprehensive remedial scheme for redressing alleged violations of the FHA, ADA and Rehabilitation Act, Plaintiff's §1983 claims should likewise be dismissed as improper. *Hopkins,* 2014 WL 3583867 at *6.

> ### 4. Counts IV and V Nonetheless Fail to Allege a Due Process Violation Because Only Random and Unauthorized Action by an HACD Employee is Alleged and Plaintiffs Have Adequate State Law Remedies

Because Plaintiffs have failed to state a claim against HACD under *Monell*, this court need not consider whether the Complaint sufficiently alleges a due process violation. *Orozco v. Dart*, 64 F.4th 806, 823 (7th Cir. 2023) ("[I]t is not sufficient for him to merely demonstrate a valid due process violation. He must go a step further and show the municipality itself is liable for the harm he suffered."). Regardless, Plaintiffs have also failed to allege a procedural due process violation in Counts IV and V because their claims are based upon the random and unauthorized alleged conduct of an HACD employee (Alexis Moreland) in processing their portability request, and because Plaintiffs do not allege that post deprivation remedies are inadequate. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). A plaintiff alleging a procedural due process claim based on "random and unauthorized" conduct of a state actor "must either avail herself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir.1996) (citing *Daniels v. Williams*, 474 U.S. 327, 339–40 (1986) (Stevens, J., concurring)). Plaintiffs do not allege they availed themselves of state law remedies, including an informal hearing on termination of their voucher under federal and local regulations, or a state-law petition for a writ of certiorari for review of the termination decision. *See*, *e.g.*, *Tolliver v. Hous. Auth. of Cty. of Cook*, 2017 IL App (1st) 153615, ¶ 19; *Landers v. Chicago Hous. Auth.*, 936 N.E.2d 735 (Ill. App. Ct. 2010). These procedures are constitutionally adequate, and Plaintiffs have not met their burden to alleged otherwise. *See Doherty*, 75 F.3d 318 at 324–25 (post deprivation remedy); *Hatter v. Williams*, 844 F. App'x 870, 875 (7th Cir. 2021) (pre deprivation remedy). Nor do Plaintiffs sufficiently plead a substantive due process claim, which likewise requires allegations

13

of a separate constitutional violation or the inadequacy of state-law remedies. Based on the same, Plaintiffs' procedural and substantive due process claims pled in Counts IV and V must be dismissed for failure to state a claim. *See Doherty*, 75 F.3d 318 at 325; *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010); *Mogan v. City of Chicago*, 2022 WL 159732 at \*16 (N.D. Ill. Jan. 18, 2022).

**C.     Count VI Must Be Dismissed Because HACD Is Immune from Plaintiffs' Tort Claims and Because Plaintiffs Nonetheless Fail to Plead Facts Supporting  an IIED Claim**

HACD is also entitled to dismissal of Plaintiffs' tort claims pled in Count VI based on various provisions of the Tort Immunity Act, each of which provides absolute immunity to HACD. Count VI raises general allegations regarding HACD's alleged tortious conduct in failing to enforce alleged federal regulations in the administration of the housing program, failing to enforce building safety violations allegedly posing health risks at the private property where Plaintiffs resided, and failing to provide continued payment of public welfare goods or funds by way of the housing assistance under the HCV program administered by HACD. *Ex. A at ¶61.* Specifically, HACD is immune pursuant to Section 2-103 of the Act, which provides that a local public entity such as HACD is immune from injuries caused by the failure to inspect property or by making an inadequate or negligent inspection of another's property for code violations. *745 ILCS 10/2-103.* HACD is also immune from Count VI pursuant to Section 2-105 of the Act, which provides immunity for any injury caused by a local public entity's  failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its own, to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety. *745 ILCS 10/2-105.* Finally, HACD is immune from Count VI pursuant to Section 2-108 of the Act, which provides that a local public entity is not liable for any injury caused by the granting, or failure to grant, public welfare goods or moneys." *745 ILCS 10/2-108.*

14

Plaintiffs' claims asserted in Count VI fall squarely within each of the aforesaid immunities, and because each is absolute, any allegations regarding intentional and/or willful conduct are without consequence to each such claim. To the extent that Plaintiffs' claims in Count V, though construed by HACD as an attempted *Monell* claim, may be construed as a negligence claim under Illinois law, HACD is also immune from any such negligence claims on the same basis. Therefore, HACD is immune from Count VI as pled and entitled to dismissal as a matter of law.

In the alternative, however, Plaintiffs claim for intentional inflection of emotional distress must be dismissed for failure to state a plausible claim. To state a claim for intentional infliction of emotional distress, a plaintiff must plead that (1) the defendant's conduct was truly extreme and outrageous, (2) the defendant either intended to inflict severe emotional distress or knew that severe emotional distress was likely, and (3) the defendant's conduct did in fact cause severe emotional distress. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). Tortious or criminal intent or even malice is not enough. *Id.* The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Here, Plaintiffs allege only that HACD's employee delayed the processing of Plaintiffs' portability request and that the delay resulted in the termination of Plaintiffs' housing assistance. Plaintiffs' Complaint is completely devoid of facts alleging conduct by HACD which rise to the level of "truly extreme and outrageous" required, and is devoid of allegations that HACD intended or knew severe emotional distress would result from the same. Because the conclusory allegations in Count VI are insufficient to support an IIED claim, Count VI must also be dismissed.

**D.      Plaintiffs' Prayers for Punitive Damages and Prayer for Attorneys' Fees Must Be Stricken as Matter of Law**

Plaintiffs have asserted prayers for punitive damages, as well as a prayer for attorneys' fees in their Complaint, each of which must be stricken as a matter of law should any claim asserted herein stand. As to Plaintiffs' prayer for punitive damages, municipalities and local government entities are immune from the imposition of punitive damages under the civil rights laws. *Newport v. Fact Concerts,* 453 U.S. 247, 271, 101 S.Ct. 2748 (1981); *Beard v. City of Chicago,* 299 F.Supp.2d 872 (N.D.Ill. 2004). Further, Illinois state law immunizes local government entities from punitive damages for claims such as those Plaintiff now alleges. *See 745 ILCS 10/2-102 ("*Notwithstanding any other provisions of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party."). Regarding Plaintiffs' prayers for recovery of attorney's fees, they too must be stricken as pro se litigants are not entitled to collect attorney's fees and a non-attorney is not entitled to attorney's fees. *Kay v. Ehrler,* 499 U.S. 432 (1991); *Smith v. DeBartoli,* 769 F.2d 451, 453 (7th Cir. 1985); *DeBold v. Stimson*, 735 F.2d 1037, 1041 (7th Cir. 1984).

**E.     To the Extent Any Claims are Construed Based on Failure to Comply with Federal Housing Regulations Plaintiff Has No Private Right of Action**

Plaintiffs allege that Defendant HACD's employee violated their rights and/or other statutes set forth in the Complaint by allegedly failing to comply with HUD's regulations relative to processing requests and/or the portability process, regarding conditions at the subject privately owned premises from which they were evicted, and/or in the conclusion of housing assistance through the HCV program. *Ex. A.* Although Plaintiffs assert no specific count based solely upon such alleged violations, Defendant HACD addresses the same so as to avoid waiver. Specifically, HUD's regulations foreclose a private right of action to enforce its regulations. Section 982 does not create any right of the family, or any party other than HUD or public housing agency ("PHA") to require enforcement of requirements by HUD or the PHA or to assert any claim against HUD

16

or the PHA for damages, injunction, or other relief, for alleged failure to enforce the HQS. *24 C.F.R. §982.407*; see also *Davis v. Sellas*, 580 F. App'x. 467, 468 (7th Cir. 2014) (no private right of action exists for a Section 8 voucher holder to force a landlord to comply with housing quality standards). Plaintiffs have failed to plausibly allege a claim supporting a private right of action to enforce HUD's regulations or standards, and have accordingly failed to plead a plausible claim based on the same. To the extent this Court construes any allegation as attempting to present a claim based upon the same, dismissal with prejudice is required.

## CONCLUSION

Because Plaintiffs have failed to state a claim against Defendant HACD as to all claims, HACD is entitled to dismissal of all claims, with prejudice, as a matter of law. In the alternative, Defendant moves this Court to strike the prayers for punitive damages and attorney's fees.

WHEREFORE, Defendant, HOUSING AUTHORITY OF THE COUNTY OF DEKALB, prays that this Court grants its motion to dismiss Plaintiffs' Complaint, with prejudice, to strike the prayers for punitive damages and attorney's fees, and for all other relief in its favor which this Court deems just and proper.

Respectfully submitted,

**HOUSING AUTHORITY OF THE COUNTY OF DEKALB**

*/s/ Allie M. Burnet*

Allie M. Burnet
**Best, Vanderlaan & Harrington**
200 N LaSalle St., Suite 2600
Chicago, IL 60601
(312) 819-1100
eservice@bestfirm.com
aburnet@bestfirm.com

17

## CERTIFICATE OF SERVICE

I, the undersigned, state that I caused copies of the foregoing to be served, with enclosures referred to thereon, if any, by **electronic delivery through the Court's filing system** to all parties of record, at their addresses of record, on September 4, 2025.

/s/ *Allie M. Burnet*