UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| KAREN SAM and ROBERT SAM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 25 C 50219 |
| | ) | |
| DEKALB HOUSING AUTHORITY; | ) | Judge Johnston |
| ILLINOIS HOUSING DEVELOPMENT | ) | |
| AUTHORITY; TOWN OF SYCAMORE; | ) | |
| and UNITED STATES DEPARTMENT OF | ) | |
| HOUSING AND URBAN | ) | |
| DEVELOPMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF HUD'S MOTION TO DISMISS

Plaintiffs Karen and Robert Sam sue the United States Department of Housing and Urban Development (HUD) for HUD's allege failure to intervene despite their complaints that the DeKalb Housing Authority delayed processing their request to transfer their housing choice voucher to another jurisdiction. As an initial matter, the Sams's tort claims and all claims seeking money damages should be dismissed under the doctrine of sovereign immunity. In addition, the Sams fail to state a claim against HUD. Therefore, all claims against HUD should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

### Background

According to the allegations in the complaint, plaintiffs Robert and Karen Sam were long-time participants in the housing choice voucher program (also known as Section 8), which was administered by the DeKalb Housing Authority (DHA) and "overseen federally" by HUD. Complaint ¶ 24. The Sams allege that Karen and their daughter, H.S., are disabled. *Id.* ¶ 25. In

2023, they successfully appealed an eviction judgment in a case filed by their landlord, BHA Holdings, LLC, in state court. *Id.* ¶ 26; *BKA Holdings, LLC v. Sam*, 2023 IL App (2d) 230163.

The complaint alleges that the DHA "was required to process a portability request so they could move to a safer, better-suited location in another jurisdiction." *Id.* ¶ 26. "Portability" in the housing choice voucher program refers to the process through which a family can transfer its rental subsidy to a location outside the jurisdiction of the public housing agency that initially provided the family with a voucher. 24 C.F.R. §§ 982.353(b) and 982.355; *see also* 42 U.S.C. § 1437f(r). The Sams allege that, despite its legal obligations, the DHA "delayed processing the port request for months" and "while stalling the port request, Melissa Mobile and her attorney Nicholas Cronauer refiled a new eviction case." Complaint ¶¶ 27-28. The Sams allege that they "immediately began contacting HUD," including over "50 separate outreach efforts" to James Cunningham, "a regional HUD official pleading for assistance"; HUD, however, "took no action." *Id.* ¶ 29.

The Sams allege that they were evicted from their home and "despite the clear violations of federal housing law, due process, and disability protections, HUD and its officials refused to act." *Id*. ¶ 34. They allege that they have "suffered the loss of their housing voucher, ongoing homelessness, severe medical decline, loss of income, and medical trauma." *Id.* ¶ 35. The complaint asserts disability discrimination claims under the Federal Housing Act, the Rehabilitation Act, and the Americans with Disabilities Act, as well as claims for denial of due process and infliction of emotional distress. The Sams seek $7 million in compensatory and punitive damages. *Id.* ¶ 7.

**Discussion**

I.      **All Claims for Money Damages and Tort Claims Should Be Dismissed under the Doctrine of Sovereign Immunity.**

Under the doctrine of sovereign immunity, the United States and its agencies are immune from all suits, except when Congress has waived that immunity by statute. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The United States' consent cannot be implied but must be unequivocally expressed, *United States v. King*, 395 U.S. 1, 4 (1969), and must be construed strictly in favor of the sovereign, *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986). To maintain a suit against the United States, the plaintiff must "identify . . . a federal law that waives the sovereign immunity of the United States to the cause of action." *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003); *Cole v. United States*, 657 F.2d 107, 109 (7th Cir. 1981).

Here, the Administrative Procedure Act (APA)—the only potential waiver of sovereign immunity identified in the complaint—does not waive HUD's sovereign immunity with respect to money damages. *Michigan v. United States Army Corps of Engineers*, 667 F.3d 765, 774-75 (7th Cir. 2011) (the APA waives sovereign immunity with respect to claims seeking declaratory or injunctive relief based on "constitutional challenges and other claims arising under federal law," but not with respect to claims for money damages). Therefore, the Sams's claims against HUD should be dismissed to the extent they seek money damages.

Further, the Federal Tort Claims Act (FTCA) does not waive sovereign immunity with respect to any tort claims asserted by the Sams. No remedy is available against the United States under the FTCA unless the plaintiff has first presented a claim to the appropriate federal agency and that agency has denied the claim or has failed to issue a final decision within six months of the date that the claim was presented. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106 (1993); *Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997) ("No one may file suit under

the Federal Tort Claims Act without first making an administrative claim.").  Here, the Sams never filed an administrative tort claim.  Exhibit A (declaration of Eric Levin); *see Chaba v. United States Postal Serv.*, 2021 WL 1293830, at *5 (N.D. Ill. 2021) (considering agency's declaration and noting "it is altogether routine for courts to dismiss on Rule 12(b)(6) grounds for failure to exhaust"); *Blake v. Bradley*, 2022 WL 865843, at *7 (N.D. Ill. 2022) (dismissing FTCA claim for failure to exhaust).

Accordingly, the court should dismiss the Sams's tort claim(s) and all other claims to the extent they seek money damages.

## II.  The Claims against HUD Should Be Dismissed for Failure to State a Claim.

In addition, all claims against HUD should be dismissed because the complaint fails to state a claim against HUD.  In deciding a motion to dismiss under Rule 12(b)(6), the court must take as true all well-pleaded allegations and make all possible inferences from the allegations in the plaintiff's favor.  *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023).  To survive a motion to dismiss, the complaint must state a plausible claim by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.  The Complaint Fails to State a Claim against HUD under the FHA.

The complaint fails to a state claim against HUD for a discriminatory housing practice under the Fair Housing Act (FHA).  Under the FHA, it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap," 42 U.S.C. § 3604(f)(1), or to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap," 42 U.S.C. § 3604(f)(2).  Assuming for the sake of

4

argument that either of those provisions could apply to a delay in processing a portability request, here, it was DHA that allegedly delayed the request, not HUD. Nor does the complaint allege facts that give rise to a plausible inference that HUD discriminated against the Sams based on a disability. Thus, the complaint fails to state a claim that HUD engaged in a discriminatory housing practice under the FHA.[1]

Likewise, the complaint fails to allege a retaliation claim under the FHA. Under 42 U.S.C. § 3617, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." Here, the complaint fails to allege that HUD "coerced, intimidated, threatened or interfered with" the Sams in the exercise or enjoyment of a right granted or protected under the FHA, or on account of the Sams having exercised or enjoyed such a right, or on account of the Sams having aided or encouraged any other person in the exercise or enjoyment of such a right. To the contrary, the complaint merely alleges that HUD failed to intervene when the Sams complained about the DHA's delay in handling their portability request.

Further, the Sams fail to state a claim under the FHA for another reason: the complaint does not allege facts that would establish that HUD's conduct proximately caused the Sams any injury. *Bank of Am. v. City of Miami*, 581 U.S. 189, 202-03 (2017) (an FHA plaintiff must establish proximate causation, *i.e.*, "some direct relation between the injury asserted and the

---

[1] The complaint alleges that defendants' actions had a "*discriminatory* impact" on disabled individuals, Karen and H.S., not a *disparate* impact. Complaint ¶ 38 (emphasis added). Even if the Sams intended to assert a disparate impact theory, the complaint fails to state a claim based on such a theory because it does not allege a statistical disparity or that HUD maintained a specific policy that caused a disparity. *Trimuel v. Chicago Hous. Auth.*, 695 F. Supp. 3d 972, 982 (N.D. Ill. 2023).

injurious conduct alleged."). Here, the Sams's alleged injuries were incurred when they were evicted *by their landlord* after *the DHA* delayed their portability request. HUD's alleged conduct—ignoring the Sams's requests for intervention—had no direct relation to their alleged injuries.

### B. The Complaint Fails to State a Claim against HUD under the Rehabilitation Act or the ADA.

The Sams also fail to state a claim against HUD under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, or § 202 of the Americans with Disability Act (ADA), 42 U.S.C. § 12132. At the outset, any claim under Title II of the ADA fails because "Title II of the ADA is not applicable to the federal government." *Cellular Phone Task Force v. F.C.C.*, 217 F.3d 72, 73 (2d Cir. 2000).

Further, a "basic element" of either a claim under § 504 of the Rehabilitation Act or Title II of the ADA is that "the plaintiff must have been denied governmental benefits because of his disability." *P.F. v. Taylor*, 914 F.3d 467, 471 (7th Cir. 2019). The complaint, however, does not allege that *HUD* denied the Sams the benefits of the housing choice voucher program. Instead, the complaint alleges that *the DHA*—which was responsible for administering the voucher program in DeKalb County—delayed processing the Sams's portability request.

In addition, the Sams fail to allege that HUD discriminated against them based on any disability. To allege disability discrimination, the plaintiff must allege that the defendant "intentionally acted on the basis of the disability" or "refused to provide a reasonable modification." *CTL ex rel. Trebatoski v. Ashland School Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).[2] Here, the complaint merely alleges that HUD "ignored" their requests for intervention. Standing alone, that allegation does not give rise to a plausible inference that HUD discriminated against

---

[2] To prove disability discrimination, the plaintiff can also show that "the defendant's rule disproportionally impacts disabled people." *Trebatoski*, 743 F.3d at 528-29. However, no such "rule" is implicated by the complaint.

6

the Sams based on any disability. Nor does HUD's alleged failure to intervene constitute the denial of a reasonable accommodation.

**C.      The Complaint Fails to State a Claim that HUD Denied the Sams Due Process.**

The complaint also fails to state a claim that HUD deprived the Sams of due process. To state a claim for denial of due process, the plaintiff must allege that the government deprived him "of a protected liberty or property interest and that the deprivation occurred without adequate due process." *Halfhill v. Northeast School Corp.*, 472 F.3d 496, 500 (7th Cir. 2006). Here, the complaint fails to allege that HUD deprived the Sams of a property interest. Assuming for the sake of argument that a delay in processing a portability request could constitute the deprivation of a property interest, the DHA, not HUD, allegedly delayed processing the Sams's request. Further, to the extent that the Sams premise their due process claim on their eviction, the landlord, not HUD, conducted the eviction.

Likewise, the complaint fails to state a claim that HUD violated the Sams's substantive due process rights. To state such a claim, the plaintiff "must allege that the government violated a fundamental right or liberty" and that the violation was "arbitrary and irrational." *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019). "Substantive due process protects against only the most egregious and outrageous government action." *Id*. Here, the complaint fails to allege that HUD violated a fundamental right or liberty, much less that such a violation was arbitrary or irrational. Nor is HUD's alleged conduct "egregious and outrageous." Therefore, any due process claims should be dismissed.

**D.      The Complaint Fails to State a Claim for Infliction of Emotional Distress.**

In addition, the Sams fail to state a claim for infliction of emotional distress (even if this tort claim were not subject to dismissal on jurisdictional grounds). The tort of intentional infliction

of emotional distress requires the plaintiff to show that (1) the conduct involved is "truly extreme and outrageous," (2) the defendant either "intend[ed] that his conduct inflict emotional distress" or knew there was "at least a high probability that his conduct [would] cause severe emotional distress," and (3) the conduct "at least cause[d] severe emotional distress." *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041 at ¶ 50. Here, HUD's alleged conduct—"ignoring repeated calls for assistance"—was not "truly extreme and outrageous," nor would HUD have known that such conduct would be highly probable to cause severe emotional distress. Further, to plead negligent infliction of emotional distress, a "direct victim" (as opposed to a "bystander") must allege not only the traditional elements of negligence—duty, breach, causation, and damages—but also must allege "contemporaneous physical injury or impact." *Schweihs*, 2016 IL 120041 at ¶¶ 31, 38. The complaint fails to allege the traditional elements of negligence or that the Sams suffered a contemporaneous physical injury or impact as a result of HUD's conduct.

### E. The Complaint Fails to State a Claim under the APA.

Apart from the enumerated counts of their complaint, the complaint suggests that the Sams may be asserting a claim under § 702 of the APA "for failure to act in accordance with federal law." Complaint ¶ 9. As an initial matter, judicial review is not available under the APA because there was no "final agency action," 5 U.S.C. § 704, which requires that the challenged action "represent the 'consummation' of an agency's decisionmaking process" and "determine 'rights or obligations.'" *Driftless Area Land Conservancy v. Rural Utilities Serv.*, 74 F.4th 489, 493 (7th Cir. 2023) (quoting *Army Corp. of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016)). Here, HUD's alleged failure to intervene in DHA's processing of the portability request was neither the consummation of a decisionmaking process nor a determination of rights or obligations. In

8

addition, the complaint fails to identify any violation of federal law by HUD. Accordingly, any claim under the APA should be dismissed.

**F.**     **The Complaint Fails to State a Claim for Failure to Enforce the Law.**

Finally, to the extent the Sams assert a claim against HUD for the failure to enforce the law, the complaint fails to state such a claim. The Sams fail to identify any legal duty that required HUD to take any enforcement action against the DHA or any right to sue HUD for not taking such action. Indeed, courts have dismissed similar claims brought against HUD and other agencies. *See Faccio v. United States Dep't of Housing and Urban Dev.*, 442 Fed. Appx. 599, 600 (2d Cir. 2011) (affirming dismissal of HUD because "[n]o right of action lies against HUD for its failure to investigate a charge of discrimination under the Fair Housing Act"); *Garces v. United States Dep't of Justice*, 2025 WL 1743521, at *2 (W.D. Tex. 2025) (dismissing claim against the DOJ for failure to enforce the ADA); *Frick v. United States Dep't of Justice*, 2025 WL 1927712 (W.D. Wisc. 2025) (dismissing claim that the DOJ failed to respond to complaints about disability violations, noting that the plaintiff could not "point to any specific provision in the Rehabilitation Act that would require a federal agency to respond to all complaints of disability discrimination, let alone to bring any action based on such complaint"); *Copeland v. United States*, 622 F. Supp. 2d 1347 (S.D. Fla. 2008) (dismissing suit against HUD based on alleged failure to take

9

enforcement action against local housing authority because that decision was committed to the agency's discretion and, therefore, not reviewable under the APA).

## Conclusion

For the foregoing reasons, the court should dismiss all claims against HUD.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ David H. DeCelles
DAVID H. DeCELLES
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-4220
david.decelles@usdoj.gov

10