Legal Authority Published
Only on an Electronic Database

Case: 3:25-cv-50219 Document #: 40-2 Filed: 09/12/25 Page 2 of 16 PageID #:219

Chaba v. United States Postal Service, Not Reported in Fed. Supp. (2021)

2021 WL 1293830
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Jacek CHABA, Plaintiff,
v.
UNITED STATES POSTAL SERVICE, Defendant.

20 C 4517
|
Signed 04/07/2021

**Attorneys and Law Firms**

Jacek Chaba, Willow Springs, IL, Pro Se.

AUSA, Danielle Anne Phillip, United States Attorney's
Office, Chicago, IL, for Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Gary Feinerman, United States District Judge

 **\*1** Jacek Chaba brings this *pro se* suit against the United
States Postal Service, alleging that it misled him about having
lost a package of deeply personal artifacts, when in fact it had
wrongly sold his belongings to others. Doc. 1. The suit arises
under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §
1346(b)(1). *See id.* § 2679(a). The Postal Service moves to
dismiss the suit under Civil Rules 12(b)(1) and 12(b)(6). Doc.
20. The motion is granted under Rule 12(b)(6), and the suit is
dismissed without prejudice.

## Background

In resolving a Rule 12(b)(6) motion, the court assumes
the truth of the operative complaint's well-pleaded factual
allegations, though not its legal conclusions. *See Zahn v.
N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir.
2016). The court must also consider "documents attached to
the complaint, documents that are critical to the complaint
and referred to in it, and information that is subject to
proper judicial notice," along with additional facts set
forth in Chaba's brief opposing dismissal, so long as those
additional facts "are consistent with the pleadings." *Phillips
v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir.
2013) (internal quotation marks omitted). The facts are set

forth as favorably to Chaba as those materials allow. *See
Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In
setting forth the facts at the pleading stage, the court does not
vouch for their accuracy. *See Goldberg v. United States*, 881
F.3d 529, 531 (7th Cir. 2018).

In 2019, Chaba's grandmother died in Poland. Doc. 1 at 2. He
traveled to Poland for the funeral to pay his respects to the
woman who had been his last remaining family member in
the country. *Ibid.* After the funeral, Chaba filled two packages
with documents and sentimental items and shipped them via
international mail to his home in Willow Springs, Illinois.
*Ibid.*

Chaba mailed the packages in October 2019, but one of them
had yet to arrive by January 2020. *Ibid.* He went to the Willow
Springs Post Office for help, and the local Postmaster told
Chaba that he would look into it. *Ibid.* Later in January, the
Postmaster emailed Chaba to tell him that the package had
been redirected to a mail recovery center in Atlanta, to give
him instructions on how to initiate a missing mail search, and
to promise that he would help Chaba recover his package.
*Ibid.*

Between March and May 2020, Chaba endured a fruitless
cycle of submitting forms on the Postal Service's website,
receiving automated responses thanking him for his inquiries,
and hearing updates informing him that his package had still
not turned up. *Ibid.*; *see id.* at 5-23. The Willow Springs Post
Office was similarly unhelpful. *Id.* at 3. At some point, the
Postal Service informed Chaba that they had disposed of his
package. *Id.* at 2.

In June 2020, Chaba received a surprising Facebook message.
*Id.* at 3. It came from a woman in Georgia (the U.S. state, not
the country), who informed him that she had purchased an
"undeliverable box" from the Postal Service containing "a lot
of pictures and papers and [a] Polish passport" belonging to
Chaba. *Id.* at 3, 29, 31. The woman told Chaba, "In Georgia
you can buy packages from [the Postal Service] from whole
the [sic] world[,] and then people, they have stores and sell
new and used items at their stores." *Id.* at 3. The woman
returned some of Chaba's property, but most of the heirlooms
that he had mailed in the package were "sold to a 4th party."
*Ibid.*

## Discussion

Chaba v. United States Postal Service, Not Reported in Fed. Supp. (2021)

**\*2** At the outset, it is necessary to clear up exactly whom is being sued, under what law, and for what relief. Starting with the last question, neither Chaba's complaint, Doc. 1, nor his opposition to the motion to dismiss, Doc. 25, is clear as to the relief he seeks. The complaint asks the court, "Please help me to find justice and punish this negligence in the name of many people." Doc. 1 at 4. It also declares that "[t]hey will never pay me back [for] what I lost for[ ]ever!" *Ibid.*; *see also ibid.* ("[W]hat that box contained no[ ]body can replace even with a million dollars."). The court construes these utterances as rhetorical flourishes, not as a waiver of the right to seek money damages. Given the complaint's request that the court "help [Chaba] to find justice," *id.* at 4, and the fact that no other relief seems available, the court construes the complaint as seeking compensatory money damages for the harm caused by the misappropriation of Chaba's parcel. *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) ("We construe pro se complaints liberally, holding them to a less stringent standard than pleadings drafted by lawyers.").

As to the law under which Chaba brings suit, the complaint does not allege a legal theory. That is not problematic, as the Seventh Circuit has instructed, time and again, that "plaintiffs in federal court have no duty to allege legal theories." *Klein v. George G. Kerasotes Corp.*, 500 F.3d 669, 671 (7th Cir. 2007); *see also*, *e.g.*, *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 761 (7th Cir. 2016) ("Pleadings need not, and do not, allege legal theories."); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) ("One [misconception] is that a complaint must set out, and that its validity depends on, a legal theory, such as 'due process' or 'equal protection.' That is not so.... A complaint must narrate a *claim*, which means a grievance such as 'the City violated my rights by preventing me from renovating my apartments.' Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint."). Because this is a money damages suit against a federal agency, the natural legal basis for recovery is the FTCA. The Postal Service treats this suit as arising under the FTCA, Doc. 21 at 1; Doc. 26 at 1, and Chaba does not suggest any other legal theory under which he can state a claim, Doc. 25 at 1-2. So the court, too, deems this suit to have been filed under the FTCA. *See Moore v. Blair*, 557 F. App'x 577, 578 (7th Cir. 2014) ("We give pro se appellants leeway and do our best to discern the legal basis for their arguments....").

As to the defendant(s), the complaint names just the "US Post Office," Doc. 1 at 1, which the Clerk's Office has construed to mean the Postal Service. The Government does not challenge that designation, but argues that "the Postal Service cannot be sued under the FTCA, as the United States is the only proper defendant in such an action." Doc. 21 at 2 n.2. That is incorrect. Under the Postal Reorganization Act, the FTCA "shall apply to tort claims arising out of activities of the Postal Service." Pub. L. No. 91-375, sec. 2, § 409(c), 84 Stat. 719, 725 (1970) (codified at 38 U.S.C. § 409(c)). And as the Supreme Court explained in *Dolan v. United States Postal Service*, 546 U.S. 481 (2006), "the Postal Reorganization Act generally waives the immunity of the Postal Service from suit by giving it the power 'to sue and be sued in its official name,' " and "also provides that the FTCA 'shall apply to tort claims arising out of activities of the Postal Service.' " *Id.* at 484 (citations and some internal quotation marks omitted) (first quoting 38 U.S.C. § 401(1), and then quoting *id.* § 409(c)). So Chaba is within his rights to name the Postal Service, not the United States, as the defendant.

Having cleared the underbrush, this is an FTCA suit against the Postal Service seeking money damages. But that fact implicates a deficiency that cannot be patched up—Chaba's failure to exhaust administrative remedies. *See Chronis v. United States*, 932 F.3d 544, 548 (7th Cir. 2019) (Barrett, J.) ("[T]here is a difference between generously construing a pro se complaint and effectively excusing a pro se plaintiff from the statutorily mandated exhaustion requirement.").

**\*3** As noted, a suit against the Postal Service relating to its "activities" must comply with the FTCA. 39 U.S.C. § 409(c). And a prerequisite for pursuing an FTCA suit is administrative exhaustion: "An action shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency [here, the Postal Service] and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). By regulation, "a proper administrative claim under the FTCA contains four elements: (1) notification of the incident; (2) a demand for money damages in a sum certain; (3) the title or legal capacity of the person signing; and (4) evidence of the person's authority to represent the claimant." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014) (citing 28 C.F.R. § 14.2(a)).

Chaba attached to his complaint, and once again submits with his opposition to the motion to dismiss, his extensive correspondence with postal authorities in Illinois and Georgia. Doc. 1 at 5-28; Doc. 25 at 3-22. Chaba confirmed at the motion hearing, Doc. 27, that those materials

Case: 3:25-cv-50219 Document #: 40-2 Filed: 09/12/25 Page 4 of 16 PageID #:221

Chaba v. United States Postal Service, Not Reported in Fed. Supp. (2021)

encompassed everything that he submitted to the Postal Service in connection with his package. Those materials demonstrate only Chaba's effort to *locate* his package. Chaba did not submit any claim or paper to the Postal Service in which he demanded *damages*—the relief he seeks in this suit. Doc. 21-1 (declaration from a supervisor at the Postal Service's National Tort Center averring that there is no record of any administrative claim filed by Chaba). Chaba's failure to submit an administrative claim in which he, at the very least, notified the Postal Service that he wants to be compensated monetarily for his loss means that he has failed to exhaust. *See Smoke Shop*, 761 F.3d at 788 ("Unfortunately for [Chaba], we have never held that a request for the return of property— unaccompanied by a statement that the claimant would seek money damages if the property was not returned—satisfies § 2675(a). In fact, ... we [have] said just the opposite."); *see also Chronis*, 932 F.3d at 547 ("To be sure, failing to put a number on the amount demanded is not necessarily fatal. It is 'only fatal if it can be said to have "hindered" or "thwarted" the settlement process "that Congress created as a prelude to litigation." ' But a claimant who *neither* makes it clear that [ ]he is demanding money from the agency *nor* says how much [ ]he is demanding thwarts the settlement process envisioned by the FTCA.") (citations omitted) (quoting *Smoke Shop*, 761 F.3d at 787).

The court therefore dismisses the suit for failure to state a claim due to Chaba's failure to exhaust. The Postal Service seeks a slightly different disposition—dismissal for lack of subject matter jurisdiction. That disposition would be incorrect.

The Postal Service cites *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972), and *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015), for the proposition that the FTCA's exhaustion requirement is jurisdictional. Doc. 21 at 2 ("The administrative exhaustion requirement is a prerequisite that cannot be waived."). But the Seventh Circuit has repeatedly disavowed that aspect of *Best Bearings*. In *Smoke Shop*, for instance, the Seventh Circuit observed that "[s]everal courts consider 28 U.S.C. § 2675(a)'s exhaustion requirement to go to the court's subject-matter jurisdiction over the FTCA action," and acknowledged—citing its 1972 decision in *Best Bearings*—that "one of our early decisions confronting the meaning of the FTCA's administrative claim requirement operated under this same assumption." *Smoke Shop*, 761 F.3d at 786 (citation omitted). But the Seventh Circuit proceeded to explain that it "no longer treats § 2675(a) as a jurisdictional prerequisite," *ibid*, which surely explains

why Westlaw has affixed to *Best Bearings* a red flag. *See also Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012) ("In *Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008), ... and the following year in *Collins v. United States*, 564 F.3d 833, 838 (7th Cir. 2009), we explained that the [FTCA's] requirement of exhausting administrative remedies is not jurisdictional...."); *Palay v. United States*, 349 F.3d 418, 424 (7th Cir. 2003) ("More recently, ... we have questioned whether the exhaustion requirement and the statutory exceptions to the FTCA truly are jurisdictional in nature.... [T]he statutory prerequisites to suit and exceptions to governmental liability should instead be viewed as aspects of the plaintiff's statutory right to relief and, at the pleading stage, dealt with pursuant to Rule 12(b)(6).") (citations omitted).

**\*4** The Supreme Court's 2015 decision in *Kwai Fun Wong* did not upend the Seventh Circuit's view. *Kwai Fun Wong* held that the FTCA's statute of limitations is not jurisdictional, relying on the fact that the FTCA's explicit jurisdictional grant, 28 U.S.C. § 1346(b)(1), does not "condition the ... grant on the limitations periods," and explaining that "treating [the FTCA's] time bars as jurisdictional would thus disregard the structural divide built into the statute." 135 S. Ct. at 1633. *Kwai Fun Wong* did not discuss exhaustion, but its reasoning supports the proposition that the exhaustion requirement— which, like the time-bar rule, does not appear in § 1346(b)(1)—is not jurisdictional.

Nor does the Supreme Court's recent decision in *Brownback v. King*, 141 S. Ct. 740 (2021), change the analysis. The Court held in *Brownback* that the explicit jurisdictional requirements in § 1346(b)(1) are *also* merits-based requirements, such that they trigger the FTCA's judgment bar. *See id.* at 747-50. But the Court did not suggest that the converse—that every merits-based FTCA requirement, such as exhaustion, is jurisdictional—is true as well.

The Postal Service is likewise wrong to argue that Chaba's suit must "be dismissed for lack of subject matter jurisdiction because his claim does not fall within the FTCA's general waiver of federal sovereign immunity." Doc. 21 at 3. The argument is premised on an exception to the FTCA's waiver of sovereign immunity, directed at suits involving the mail, for "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b).

For starters, even if the Postal Service were correct that this suit fell within that exception, the court still would have

subject matter jurisdiction. The Seventh Circuit has explained that the exceptions set forth in § 2680 concern only the scope of the United States's waiver of sovereign immunity, and— like the exhaustion rule—do not speak to the jurisdiction of the district courts. *See Parrott*, 536 F.3d at 634 ("One could not find the exceptions of § 2680 to be jurisdictional without at the same time giving jurisdictional status to the remainder of these provisions, including the exhaustion rule.... The statutory exceptions enumerated in § 2680(a)-(n) to the United States's waiver of sovereign immunity (found in § 1346(b)) limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction from the federal courts."); *Palay*, 349 F.3d at 424 ("[T]he statutory prerequisites to suit and exceptions to governmental liability should ... be viewed as aspects of the plaintiff's statutory right to relief and, at the pleading stage, dealt with pursuant to Rule 12(b)(6).").

In any event, Chaba's suit does not fall within the mail-related exception to the sovereign immunity waiver articulated in § 2680(b). Chaba alleges that the Postal Service *intentionally* misappropriated his parcel by selling it to a third party and misrepresenting its whereabouts when he inquired after it. Doc. 1 at 2-4; Doc. 25 at 1. That conduct cannot be characterized as mere "loss" or "negligent transmission." (Although the complaint refers at one point to "negligence," Doc. 1 at 4, the court does not construe that term in its legal sense, given that Chaba, by his own admission, "has no understanding of legal terminology," Doc. 25 at 1.) And in the context of mail, "miscarriage" refers to "a failure (as of a letter) to arrive at its destination." *Miscarriage*, *Webster's Third New International Dictionary* (1961) (def. 3a); *see also Miscarriage*, *Oxford English Dictionary* (def. 3a) (3d ed. updated June 2002) ("[t]he failure of a letter, etc., to reach its destination; delivery to the wrong recipient"). That, too, fails to describe Chaba's claim, for while his parcel did not reach its intended destination, what gives rise to his suit is what the Postal Service allegedly did to his parcel afterward.

**\*5** Chaba's suit, therefore, is not excepted from the FTCA's coverage by § 2680(b). Nor is the suit excepted by § 2680(h), which removes from the FTCA's province many intentional torts, but does not mention conversion. *See Levin v. United States*, 568 U.S. 503, 507 n.1 (2013) ("Section 2680(h) does not remove from the FTCA's waiver all intentional torts, *e.g.*, conversion and trespass...."); *cf. Smoke Shop*, 761 F.3d at 780-81 (addressing an FTCA suit alleging conversion by the

Government). Chaba's complaint alleges, in so many words, that the Postal Service converted his property. *See Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2013) ("To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.") (internal quotation marks omitted).

The court recognizes that because exhaustion is nonjurisdictional (*i.e.*, merits-based), it is somewhat anomalous to rely on evidence submitted by the Postal Service (here, a declaration showing that Chaba has not submitted an administrative claim) in holding under Rule 12(b)(6) that the complaint fails to state a claim. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("[W]hen the judge considers evidence outside the pleadings he must convert the defendant's motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56 ...."); *see also Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 921 (7th Cir. 2018) (noting that exhaustion "is an affirmative defense in most ... contexts"). But Chaba has already submitted all the evidence in his possession that might show exhaustion. Doc. 1 at 5-28; Doc. 25 at 3-22. Moreover, he "does not dispute the veracity" of the declaration submitted by the Postal Service, and thus "[ ]he was not deprived of 'the opportunity to conduct discovery and to present contrary evidence on a point of genuinely disputed fact.' " *Squires-Cannon v. White*, 864 F.3d 515, 517 (7th Cir. 2017) (quoting *Williamson v. Curran*, 714 F.3d 432, 442 (7th Cir. 2013)). Under those circumstances, a Rule 12(b)(6) dismissal remains appropriate. *See ibid.* Indeed, it is altogether routine for courts to dismiss on Rule 12(b)(6) grounds for failure to exhaust, both in FTCA cases and in other contexts in which administrative exhaustion is a prerequisite to suit. *See, e.g., Chronis*, 932 F.3d at 546-49 (FTCA); *Smoke Shop*, 761 F.3d at 786-88 (FTCA); *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004-06 (7th Cir. 2019) (Title VII).

### Conclusion

The Postal Service's motion to dismiss is granted under Rule 12(b)(6). Because it rests on exhaustion grounds, the dismissal is without prejudice. *See Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) ("[T]he proper remedy for a failure to exhaust administrative remedies is to dismiss the

Case: 3:25-cv-50219 Document #: 40-2 Filed: 09/12/25 Page 6 of 16 PageID #:223

Chaba v. United States Postal Service, Not Reported in Fed. Supp. (2021)

suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims."). The court would be appreciative if counsel for the Postal Service were to assist Chaba in accessing the forms required to file the necessary administrative claim.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1293830

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Blake v. Bradley, Not Reported in Fed. Supp. (2022)

2022 WL 865843

2022 WL 865843
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Willie B. BLAKE, Plaintiff,
v.
Brian D. BRADLEY and United
States of America, Defendants.

Case No. 20 C 5856
|
Signed 03/23/2022

**Attorneys and Law Firms**

Gus Peter Apostolopoulos, Lucas & Apostolopoulos, Ltd., Addison, IL, for Plaintiff.

AUSA, Nigel B. Cooney, United States Attorney's Office, Chicago, IL, for Defendant Brian D. Bradley.

**MEMORANDUM OPINION AND ORDER**

John Robert Blakey, United States District Judge

**\*1** Plaintiff Willie B. Blake sues Federal Bureau of Investigation Special Agent Brian D. Bradley under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). In his four-page complaint, Plaintiff alleges Fourth Amendment violations (Count I) and false arrest (Count II). The United States filed a Notice of Substitution of Defendant as to any common-law tort claims, certifying that, at all times relevant, Defendant Bradley acted within the scope of his federal employment. *See* [23]. Defendants Bradley and the United States move to dismiss Plaintiffs' complaint in its entirety. *See* [12], [22], [24], [31]. For the reasons stated below, this Court grants Defendants' motions, dismisses Plaintiff's Fourth Amendment *Bivens* claim with prejudice, and dismisses Plaintiff's tort claim without prejudice.

**I. The Complaint's Allegations**
This case arises from a criminal investigation conducted by Defendant Bradley, a Special Agent with the FBI. [20] ¶ 5. On October 2, 2018, Defendant Bradley arrested Plaintiff pursuant to a warrant obtained based upon a sworn criminal complaint that included an affidavit attested to by Bradley. *Id.* The sworn criminal complaint alleged that Plaintiff: (1)

distributed packages of heroin to various locations on the west side of Chicago; (2) turned over proceeds from the heroin distributed to "LAKE DTO;" (3) conspired with others to distribute heroin as part of a criminal enterprise; and (4) conspired with others to knowingly and intentionally possess with intent to distribute a controlled substance, namely heroin. *Id.* ¶ 6. After his October 2, 2018 arrest, Plaintiff remained incarcerated for ten days, until the government voluntarily dismissed the complaint against him. *Id.* ¶¶ 9, 11.

Plaintiff sued, alleging that the criminal complaint's allegations were false and that Defendant Bradley, knowing this, nevertheless provided an affidavit attesting to the truth of the allegations. *Id.* ¶ 7. Plaintiff claims that the criminal complaint and Defendant's affidavit caused the court to issue a warrant for Plaintiff's arrest without probable cause. *Id.* ¶ 8. Plaintiff claims his arrest and incarceration violated his Fourth Amendment rights. *Id.* ¶ 10. Plaintiff also alleges that, in swearing the complaint and affidavit, Defendant Bradley made allegations with malicious, wanton, oppressive, willful, conscious, and reckless disregard for the matters asserted against Plaintiff, and that Defendant arrested Plaintiff without probable cause. *Id.* ¶ 14. Plaintiff seeks compensatory and punitive damages for the violation of his rights. *Id.* at 3–4.

Defendants move to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6), [22], [24], and they also seek to dismiss any Federal Tort Claims Act claim under Rule 12(b)(1).

**II. Legal Standard**
To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements will not suffice. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In evaluating a complaint under Rule 12(b)

**Blake v. Bradley, Not Reported in Fed. Supp. (2022)**

2022 WL 865843

(6), this Court accepts as true all well-pleaded allegations and draws all reasonable inferences in the plaintiff's favor. *See Iqbal*, 556 U.S. at 678.

**\*2** When reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court construes the Complaint in the light most favorable to Plaintiff, accepts as true all well-pleaded facts, and draws all reasonable inferences in his favor. *See Long v. Shorebank Dev't. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Plaintiff bears the burden of establishing that his Complaint meets the Court's jurisdictional requirements. *See Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014). Once jurisdictional allegations are challenged, Plaintiff must support those allegations by competent proof. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942). For a Rule 12(b)(1) motion, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether, in fact, subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation omitted).

### III. Discussion & Analysis

Defendants seek to dismiss Plaintiff's Fourth Amendment claim, arguing that the claim may not proceed under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). [32] at 4. They also argue that Plaintiff's tort claim (Count II) is precluded based upon Plaintiff's failure to exhaust administrative remedies available to him under the Federal Tort Claim Act, 28 U.S.C. § 1346(b). *Id.* at 6. This Court addresses these arguments in turn.

#### A. Plaintiff's Fourth Amendment Claim Under *Bivens* (Count I)

Plaintiff first alleges that Defendant Bradley, acting as a federal agent, knowingly supplied false information to obtain a warrant for Plaintiff's arrest. [20] ¶ 7. As a result, Plaintiff was arrested without probable cause and wrongfully incarcerated for ten days, in violation of the Fourth Amendment. *Id.* ¶ 9.

In his initial complaint, Plaintiff sought to remedy his alleged constitutional rights violation under 42 U.S.C. § 1983. [1] at 3. Defendant moved to dismiss, arguing that Defendant's status as a federal agent precluded Plaintiff's claim under § 1983. [12] at 3–6. Plaintiff apparently agreed (and rightfully

so, as § 1983 by its terms applies only to state actors, not federal officers, *e.g., Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (noting that § 1983 provides a remedy for constitutional rights violations committed by state officials and that "Congress did not create an analogous statute for federal officials."), and he amended his complaint to sue under *Bivens*.

*Bivens*, which the Supreme Court decided in 1971, analyzed whether a constitutional violation by a federal officer "gives rise to a cause of action for damages." *Id.,* 403 U.S. at 389. In *Bivens*, federal agents entered Bivens' home and arrested him without a warrant. *Id.* The agents conducted a search in front of Bivens' family and threatened to arrest his wife and children. *Id.* Bivens brought a claim directly under the Fourth Amendment for constitutional violations committed by these federal agents. *Id.* While a remedy under § 1983 was not available, the Supreme Court held that courts should "adjust their remedies so as to grant the necessary relief" where "federally protected rights have been invaded." *Id.* at 392. In *Bivens,* the Supreme Court created an implied cause of action under the Fourth Amendment for constitutional violations committed by federal officials. *Id.*

After *Bivens*, the Supreme Court recognized implied causes of action under the Constitution in two other cases: a gender discrimination claim under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment cruel and unusual punishment claim in the prison context, *Carlson v. Green*, 446 U.S. 14, 19 (1980). These "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1855 (2017). And any further expansion of the *Bivens* remedy to new contexts constitutes "disfavored judicial activity." *Id.* at 1856–57. Indeed, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* at 1857 (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

**\*3** The Supreme Court has instructed that the proper test for determining whether a case presents a "new context" under Bivens is as follows:

> If the case is different in a meaningful way from previous *Bivens* cases

Blake v. Bradley, Not Reported in Fed. Supp. (2022)

2022 WL 865843

decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859–60. If the facts do not create a "new context" for a *Bivens* action, then the action may proceed; if, on the other hand, the facts do constitute an expansion of *Bivens*, then the Court must perform a "special factors" analysis. *Id.*

Here, Plaintiff seeks to bring a claim against an FBI agent for false arrest and wrongful incarceration. Plaintiff's claim has at least some common features with the claim raised in *Bivens* itself. In *Bivens*, the plaintiff alleged his Fourth Amendment rights were violated when he was arrested and confined without a warrant. 403 U.S. at 389. Plaintiff alleges that his Fourth Amendment rights were violated when Defendant obtained a warrant for his arrest based on allegations Defendant knew to be false, which resulted in Plaintiff's arrest. [20] ¶ 7. Both cases involve a Fourth Amendment unreasonable search and seizure claim against federal officers. But the claims are far from identical: *Bivens* involved a Fourth Amendment claim based upon the warrantless search of Bivens' home in front of his family, and this case involves the alleged fabrication or falsification of representations to support probable cause. The differences "are perhaps small, at least in practical terms" but given the Court's "expressed caution about extending the *Bivens* remedy, the Court finds that Plaintiff's claim here satisfies the new-context inquiry. *See Abbasi*, 137 S. Ct. at 1865 ("Some

differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context. But here the differences identified above are at the very least meaningful ones.").

In arguing that this case differs meaningfully from *Bivens*, Defendants cite *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021), which holds that a search and seizure pursuant to a warrant (which occurred in Plaintiff's case) falls under a different legal standard than an arrest with *no warrant* (as in *Bivens*). *Id.* at 136. Thus, although both cases involve Fourth Amendment claims, that alone is not dispositive. Relatedly, *Chappell v. Wallace*, 462 U.S. 296, 305 (1983) declined to extend *Bivens* to a Fifth Amendment Due Process claim for unlawful termination, despite *Davis*, which also involved a Fifth Amendment claim, because Chappell was a military service member, whereas Davis was a congressional employee. Similarly, *Carlson* and *Malesko*, 534 U.S. 61, 74 (2001), both involved *Bivens* claims under the Eighth Amendment, but the Court declined to extend *Bivens* to *Malesko* because the claim was asserted against private prison officials rather than public officials as in *Carlson*.

**\*4** Furthermore, legal standards change across various kinds of Fourth Amendment violations. False execution of warrants, false arrest, and malicious prosecution are separate claims under the Fourth Amendment and are decided differently based upon the facts presented. *See Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (" 'Judicial guidance' differs across the various kinds of Fourth Amendment violations—like seizures by deadly force, searches by wiretap...."). In *Cantú*, the Fifth Circuit noted that courts "do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.' " 933 F.3d at 422 (quoting *FDIC v. Meyer*, 510 U.S. 471, 484 n.9 (1994)). Assessed at the proper level, Plaintiff's claim constitutes a "new context" – indeed, as in *Cantú*, Plaintiff here has not alleged that officers entered his home without a warrant or violated his rights of privacy; rather, Plaintiff, like *Cantú*, alleges that Defendant falsely implicated him in criminal activity. *See Cantú*, 933 F.3d at 423. Plaintiff's claim, like *Cantú*'s claim, is thus "meaningfully different from the Fourth Amendment claim at issue in *Bivens*." *Id. See also Zhang v. Schuster*, No. 18-cv-3283, 2022 WL 615015, at *9–10 (N.D. Ill. Mar. 2, 2022) (finding that claim alleging that defendant fabricated evidence and lied about what took place thus resulting in the false arrest of the plaintiff alleges "a different type of Fourth Amendment claim than the one at issue in *Bivens*."). A claim alleging that an FBI agent willfully duped

**Blake v. Bradley, Not Reported in Fed. Supp. (2022)**

2022 WL 865843

a judge into believing that Plaintiff committed a crime for the purpose of fraudulently securing an arrest warrant, and thus the wrongful arrest and incarceration of Plaintiff, presents a new *Bivens* context, necessitating a "special factors" inquiry.

With regard to the special factors analysis, a court should take "a far more cautious course before finding implied causes of action" that centers on separation of power principles. *Abbasi*, 137 S. Ct. at 1856. Furthermore, if an alternative remedial structure exists, this may preclude a *Bivens* remedy even where the alternative remedy is not equivalent to the remedy in *Bivens*. *Id. See also Engel v. Buchan*, 710 F.3d 698, 704 (7th Cir. 2013) ("the existence of a comprehensive, alternative remedial scheme may preclude a *Bivens* remedy even where the alternative relief is imperfect compared to *Bivens*."). For example, in *Abbasi*, 137 S. Ct. at 1849, the Supreme Court declined to extend the *Bivens* remedy, finding that injunctive or habeas corpus relief provided alternative remedies: "Indeed, the habeas remedy, if necessity required its use, would have provided a faster and more direct route to relief than a suit for money damages."

Similarly, in *Bush v. Lucas*, 462 U.S. 367 (1983), the Supreme Court held that no *Bivens* remedy was available where a federal employer committed a First Amendment violation because Congress had passed legislation that included extensive statutory and administrative remedies in cases where federal government employees' First Amendment rights were violated while employed. *Id.* at 368.

Later, in *Schweiker v. Chilicky,* 487 U.S. 412 (1988), the Supreme Court also found that no *Bivens* action was available for a due-process violation in connection with the denial of disability benefits because alternative relief was available through the Social Security Administration. *Id.* at 414 ("When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations ... we have not created additional *Bivens* remedies.").

Post *Abbasi*, the Seventh Circuit held that the existence of an alternative statute that provides a remedy (namely, the Commodities Exchange Act) precluded a *Bivens* claim. *See Effex Cap., LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 892 (7th Cir. 2019) ("An alternative remedial structure counseling hesitation against expanding the *Bivens* remedy is certainly present here.... In the Commodity Exchange Act, Congress has set forth, with significant precision, the remedies available....").

Defendants urge the Court to reject Plaintiff's claim because the Federal Tort Claims Act provides an alternative process of redress. [12] at 9. Plaintiff failed to respond to this argument, thus waiving any opposition. *E.g., Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010). As such, this Court grants Defendants' motions to dismiss based upon Plaintiff's failure to respond.

In the alternative, this Court also dismisses Plaintiff's claims based upon the merits of the Defendants' motions. Under the FTCA, 28 U.S.C. § 1346(b), federal law enforcement officers may be held liable for the torts of false imprisonment, false arrest, abuse of process, or malicious prosecution. *See Millbrook v. United States*, 569 U.S. 50, 57 (2013) (describing the FTCA's law enforcement proviso which defines "investigative or law enforcement officer" to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.").

**\*5** In *Carlson*, 446 U.S. at 20, the Court held that the plaintiff could proceed with his *Bivens* claim despite the FTCA because the FTCA and *Bivens* "provide parallel, complementary causes of action." *See id.* at 18–19 (A *Bivens* claim may be defeated in a particular case, "in two situations. The first is when defendants demonstrate 'special factors counselling hesitation in the absence of affirmative action by Congress.' The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective. Neither situation obtains in this case.") (citations omitted).

But *Abbasi* (decided 37 years later) holds that an alternative remedial structure precludes the *Bivens* claim. 137 S. Ct. at 1858 ("if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action. For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.' "). And *Abbasi* specifically noted that *Carlson* was decided in the "*ancien regime*," before the "notable change in the Court's approach to recognizing implied causes of action." *Id.* at 1855–57.

Thus, in *Cantú,* the Fifth Circuit found that the law enforcement proviso under the FTCA provided an elaborate

2022 WL 865843

statutory scheme with the possibility of a damages remedy, and therefore served as a sufficient alternative to the plaintiff's constitutional claims. 933 F.3d at 423 (citing *Abbasi*, 137 S. Ct. at 1858 and noting that an alternative remedy "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action").

The FTCA specifies that it is the exclusive remedy for injuries resulting from a federal official's torts while acting within the scope of employment. 28 U.S.C. §§ 1346(b), 2679(b)(1); *see also Duffy v. United States*, 966 F.2d 307, 310 (7th Cir. 1992). And this remedial scheme constitutes a special factor cautioning against the expansion of *Bivens* in this arena.

The notion that the existence of an alternative statute might preclude a *Bivens* action is not novel. In *Minneci v. Pollard*, 565 U.S. 118 (2012), the Supreme Court held that if state tort law provides an adequate alternative remedy to protect constitutional rights, the judiciary should not interfere by prescribing a new federal claim. *Id.* at 129. As the court noted in *Zhang*, "since *Abbasi*, many courts have found that even the potential availability of relief under the FTCA weighs against permitting a *Bivens* remedy." 2022 WL 615015, at *12 (citing *Cantú*, 933 F.3d at 423; *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020); *Greenpoint Tactical Income Fund v. Pettigrew*, 2021 WL 461560, at *13 (E.D. Wis. 2021); *Martin v. Gray*, 2021 WL 3855566, at *5 (E.D. Wis. 2021)).

Defendants point out additional special factors that should preclude any extension of *Bivens*, including the "burdens on Government employees who are sued personally" and the effect on the government overall. *Abbasi*, 137 S. Ct. at 1858. Defendants also argue that judicial interference into the executive branch's prosecutorial function constitutes a special factor. Although it is true that an implied cause of action for Plaintiff's claim would "require courts to interfere in the executive branch's investigative and prosecutorial functions," *Zhang*, 2022 WL 615015, at *13 (citing *Annappareddy*, 996 F.3d at 137), ultimately, the Court's decision not to extend *Bivens* rests upon the idea that Congress has not indicated —through the passage of legislation or otherwise—that the Court should create a new cause of action directly under the Fourth Amendment in this case.

**\*6** Plaintiff may not maintain a *Bivens* claim, and the Court thus grants Defendants' motions to dismiss any such claim with prejudice.

**B. Plaintiff's Common Law Tort Claims**

In addition to alleging a violation of his constitutional rights, Plaintiff alleges a tort claim: he alleges that Defendant acted with malicious, wanton, oppressive, willful, conscious, and reckless disregard for the trust of the matters asserted against him by knowingly submitting a false affidavit in support of the Criminal Complaint. [20] ¶ 14. Plaintiff does not clarify whether he seeks to sue under the Federal Tort Claims Act or under state law. But the Seventh Circuit has repeatedly held that "plaintiff in federal court [has] no duty to allege legal theories." *See Klein v. George G. Kerasotes Corp.*, 500 F.3d 669 (7th Cir. 2007). To the extent Plaintiff seeks to sue under the FTCA, Defendants move to dismiss under 12(b)(1) and 12(b)(6), arguing that Plaintiff has failed to exhaust administrative remedies under the FTCA before bringing this case before the Court. Such failure to exhaust, Defendants contend, compels dismissal.

To be sure, the United States may not be sued without express consent. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The Federal Tort Claims Act provides such consent, waiving sovereign immunity, subject to a number of exceptions set forth in 28 U.S.C. § 2680. The "intentional tort exception" preserves the government's immunity from suit for any "claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," *except for claims arising "out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" that are asserted against "investigative or law enforcement officers of the United States Government."* 28 U.S.C. § 2680(h) (emphasis added). An "investigative or law enforcement officer" is "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* § 2680(h). Thus, sovereign immunity is waived with respect to a claim (like Plaintiff's) alleging false arrest and false imprisonment by an FBI agent. *See, e.g., Liranzo v. United States*, 690 F.3d 78, 94–95 (2d Cir. 2012) ("[T]he United States has indeed waived its sovereign immunity from suit as to Liranzo's 'claim,' which 'aris[es] ... out of ... false imprisonment [and] false arrest.' ").

But the FTCA itself provides that claims for monetary relief against the United States are prohibited unless administrative remedies are exhausted first. *See* 28 U.S.C. § 2675(a). To "exhaust administrative remedies, the plaintiff must 'have first presented the claim to the appropriate Federal agency,' ... so that the agency has an opportunity to meaningfully

**Blake v. Bradley, Not Reported in Fed. Supp. (2022)**

2022 WL 865843

consider and address the claim prior to suit." *Chronis v. United States*, 932 F.3d 544, 546 (7th Cir. 2019) (quoting 28 U.S.C. § 2675(a)). Presentation of a claim occurs "when a Federal agency receives from a claimant ... an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a); *Chronis*, 932 F.3d at 546. A proper FTCA administrative claim "contains four elements: (1) notification of the incident; (2) a demand for money damages in the sum certain, (3) the title or legal capacity of the person signing; and (4) evidence of the person's authority to represent the claimant." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014) (citing 28 C.F.R. § 14.2(a)).

**\*7** Plaintiff's complaint does not disclose whether he exhausted his administrative remedies before filing suit. And he has not addressed the issue in his response to the motions to dismiss. But "failure to exhaust administrative remedies prior to bringing an FTCA suit mandates dismissal in favor of the United States, since exhaustion is a prerequisite to suit." *Beard v. United States*, No. 20-CV-47-JPG, 2021 WL 793986, at \*2 (S.D. Ill. Mar. 2, 2021), reconsideration denied, No. 20-CV-47-JPG, 2021 WL 2138872 (S.D. Ill. May 26, 2021) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Glade v. United States*, 692 F.3d 718, 723 (7th Cir. 2012)). [1] The Court thus dismisses Plaintiff's FTCA claim without prejudice based upon his failure to exhaust. *See Chronis*, 932 F.3d at 550 (dismissal is appropriate when plaintiff fails to

satisfy the exhaustion requirement); *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) ("[T]he proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies.").

Finally, to the extent Plaintiff actually seeks to pursue some state law tort claim, having dismissed Plaintiff's federal claim, the Court would decline to exercise jurisdiction over any such claim. *See, e.g., Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pend[e]nt state claims.").

### IV. Conclusion

For the reasons explained above, the Court grants Defendants' motions [22], [24], dismisses Plaintiff's Fourth Amendment *Bivens* claim with prejudice, and dismisses Plaintiff's tort claim (whether pursued under the FTCA or state law) without prejudice.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 865843

---

### Footnotes

1    Defendants argue that the FTCA's exhaustion requirement is jurisdictional, a requirement that cannot be waived. Not so. The Seventh Circuit has explained that it "no longer treats [the FTCA's administrative exhaustion requirement] as a jurisdictional prerequisite." *Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012) ("In *Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008), ... and the following year in *Collins v. United States*, 564 F.3d 833, 838 (7th Cir. 2009), we explained that the [FTCA's] requirement of exhausting administrative remedies is not jurisdictional...."). In *Palay v. United States*, 349 F.3d 418, 424 (7th Cir. 2003), the Court held that "statutory prerequisites to suit and exceptions to governmental liability should instead be viewed as aspects of the plaintiff's statutory right to relief and, at the pleading stage, dealt with pursuant to Rule 12(b)(6)."

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Garces v. U.S. Department of Justice, Civil Rights Division, Slip Copy (2025)

2025 WL 1743521

2025 WL 1743521
Only the Westlaw citation is currently available.
United States District Court, W.D.
Texas, San Antonio Division.

Matthew Andrew GARCES, Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,
CIVIL RIGHTS DIVISION, Defendant.

Case No. SA-25-CV-0252-JKP
|
Signed June 24, 2025

**Attorneys and Law Firms**

Matthew Andrew Garces, San Antonio, TX, Pro Se.

### ORDER ACCEPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

JASON PULLIAM, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is a Report and Recommendation of United States Magistrate Judge ("R&R") filed May 30, 2024, (ECF No. 9). The Magistrate Judge recommends that the Court dismiss this action under 28 U.S.C. § 1915(e).

By Show Cause Order (ECF No. 3), the Magistrate Judge informed Plaintiff that (1) his "claims are ostensibly identical to claims he made in *Garces v. Garland, et al.*, SA-25-CV-128-FB (HJB)" and (2) his "complaint does not state a valid claim for relief" and his claims against the Department of Justice fail because private citizens lack "a judicially cognizable interest in the prosecution of or nonprosecution of another" and his constitutional claims appear directed to individuals already sued in an earlier case on the same facts. The Magistrate Judge thus ordered Plaintiff to show cause why the Court should not dismiss his case and stated that Plaintiff could satisfy "his burden by filing an amended complaint by **April 28, 2025**, stating a plausible, non-frivolous claim for relief and addressing the issues set out" in the show cause order.

Plaintiff made no attempt to satisfy the show cause requirements. He has filed no amended complaint. Almost two months after the Magistrate Judge issued the show cause

order, the Magistrate Judge issued his R&R on May 30, 2025. The Magistrate Judge provided instructions for service and notified Plaintiff of his right to object. The notice informed Plaintiff that any objection must be specific, written, and filed within fourteen days. It further warned that a failure to object "shall bar the party from a *de novo* determination by the District Court."

On June 20, 2025, this case was reassigned to the undersigned after the prior presiding District Judge recused from the case. That same day, Plaintiff moved for the recusal of the Magistrate Judge, *see* ECF No. 13, and filed untimely objections to the R&R, *see* ECF No. 14. Courts may treat untimely objections the same as filing no objections. *Morris v. Temple Indep. Sch. Dist.*, No. 23-50173, 2023 WL 5919326, at \*1 (5th Cir. Sept. 11, 2023) (per curiam). Plaintiff makes no attempt to explain the untimeliness of his objections, and the Court declines to consider them.

Any party who seeks review of all or a portion of an R&R must serve and file specific written objections within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). As discussed at length by the Supreme Court long ago, the failure to object can affect district court review and present a waiver at the appellate level. *See, generally, Thomas v. Arn*, 474 U.S. 140 (1985). Under Fifth Circuit precedent, a failure to file objections precludes appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015). Similarly, a district court may also review an R&R merely for plain error when no objection has been raised against it. *See, e.g., Crawford v. San Marcos Consol. Indep. Sch. Dist.*, 637 F. App'x 808, 810 (5th Cir. 2016) (per curiam). When no objection has been asserted, the overarching principle of *Thomas* places the level of review within the sound discretion of the district court. *See* 474 U.S. at 142-53.

**\*2** "Because Plaintiff has not timely objected to the Recommendation, the Court need not conduct a de novo review." *Brady v. D.A. Intake, #24097633*, No. SA-25-CV-00278-XR, 2025 WL 1618155, at \*1 (W.D. Tex. June 5, 2025) (citing 28 U.S.C. § 636(b)(1)). If a party does not timely object, the District Court may review the unobjected-to proposed findings and recommendations to determine whether they are clearly erroneous or contrary to law. *Johnson v. Sw. Research Inst.*, 210 F. Supp.3d 863, 864 (W.D. Tex. 2016) (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam)). [1]

**Garces v. U.S. Department of Justice, Civil Rights Division, Slip Copy (2025)**

2025 WL 1743521

Consistent with § 636(b)(1)(C) and Rule 72(b)(2), the Court has reviewed the subject R&R for clear error on the face of the record. The Court finds no such error. This case is clearly subject to dismissal under 28 U.S.C. § 1915(e). Plaintiff's claim against the Department of Justice ("DOJ") is premised only on the agency's responsibility for enforcing federal statutes and regulations that prohibit discrimination. *See* Compl. (ECF No. 4) ¶ 4. He alleges that on July 17, 2024, he informed DOJ of the alleged violations of Judge Huff and was informed that the DOJ is unable to take direct action on every report. *Id.* ¶¶ 9–10. He claims the DOJ violated the Americans with Disabilities Act of 1990 ("ADA") through the failure to investigate. *Id.* ¶¶ 10, 12. As stated by the Magistrate Judge, Plaintiff has stated no basis under the ADA to sue the DOJ for failing to investigate.

In an analogous context, courts have found that "[t]he case law is clear and overwhelmingly in support of the view that plaintiff has no claim under any legal theory against the EEOC in connection with the agency's investigation, disposition, enforcement or administration of Title VII or other antidiscrimination laws." *Simien v. EEOC*, No. CIV.A. 08-4978, 2009 WL 799982, at *2 (E.D. La. Mar. 24, 2009) (citing, *inter alia, Newsome v. EEOC*, 301 F.3d 227, 231–32 (5th Cir. 2002)). While *Simien* does not involve the DOJ, it does address an alleged failure to enforce the ADA. The Court

finds its analysis and conclusions equally applicable in this case against the DOJ.

The Court has given Plaintiff an opportunity to amend his complaint, and he has failed to do so. His only claim against the DOJ is brought under the ADA, and that claim fails to state a claim upon which relief can be granted. It is thus subject to dismissal under 28 U.S.C. § 1915(e). Furthermore, any claims against Judge Yolanda Huff or Officer Jason Wolf are subject to dismissal as duplicative or malicious because Plaintiff sued them in a prior case on the same or similar facts. *See Mendives ex rel. R.C.M. v. Bexar Cnty.*, No. SA-21-CV-0356-JKP, 2021 WL 4705175, at *2 (W.D. Tex. Oct. 8, 2021).

**\*3** Finding no clear error on the face of the record, the Court **ACCEPTS** the Magistrate Judge's recommendation (ECF No. 9). As recommended, the Court **DISMISSES** this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). It **MOOTS** the motion for recusal (ECF No. 13) and will issue an appropriate final judgment by separate filing.

**IT IS SO ORDERED this 24th day of June 2025.**

**All Citations**

Slip Copy, 2025 WL 1743521

---

### Footnotes

1    While Rule 72(b) does not facially require any review in the absence of a specific objection, the advisory committee notes following its adoption in 1983 state: "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Further, failure to object shall also bar appellate review of those portions of the Magistrate Judge's Report and Recommendation that were ultimately accepted by the district court, unless the party demonstrates plain error. *Thomas*, 474 U.S. at 150-53; *Wilson*, 864 F.2d at 1221.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Frick v. U.S. Department of Justice, Slip Copy (2025)

2025 WL 1927712

2025 WL 1927712
Only the Westlaw citation is currently available.
United States District Court, W.D. Wisconsin.

Tyler C. FRICK, Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE, Kristen Clarke, Lisa
Monaco, Benjamin Mizer, Bobak Talebian, Rebecca
Bond, Emily Ross, and Michael Horowitz, Defendants.

24-cv-772-wmc
|
Signed July 11, 2025
|
Filed: July 14, 2025

**Attorneys and Law Firms**

Tyler C. Frick, Nekoosa, WI, Pro Se.

U.S. Attorneys Civil Notices, for Defendant U.S. Department
of Justice.

OPINION AND ORDER

WILLIAM M. CONLEY, District Judge

**\*1** In a previous order, this court dismissed plaintiff Tyler
Frick's claims against the United States Department of
Justice and seven of its senior-level employees. Frick had
alleged that defendants failed to respond to, or otherwise
take action on, his numerous complaints to them alleging
disability discrimination and violations of the Americans
with Disabilities Act and Rehabilitation Act. However,
Frick's original complaint was dismissed because: (1) his
Rehabilitation Act claims for monetary damages were barred
by sovereign immunity; (2) his ADA claims could not be
brought against a federal agency or federal employees; and (3)
his allegations did not support a discrimination claim under
either the Civil Rights Act or Equal Protection Clause. (Dkt.
#13.) Frick filed a motion for reconsideration, which the court
granted, permitting Frick to file an amended complaint, which
he has now done.

In his amended complaint, Frick abandons all of his
claims for monetary relief and instead seeks only injunctive
relief under the Rehabilitation Act. Specifically, he seeks
a court order requiring DOJ to respond to his messages
and complaints about disability and civil rights violations.
But even though Frick has address some of the problems
identified in this court's previous order, he still fails to
address one of the primary problems with his claim against
the DOJ and its employees: "an agency's decision not to
prosecute or enforce, whether through civil or criminal
process, is a decision generally committed to an agency's
absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831
(1985). This is particularly true where Frick cannot point
to any specific provision in the Rehabilitation Act that
would require a federal agency to respond to all complaints
of disability discrimination, let alone to bring any action
based on such complaints. Instead, whether and how to
engage in communications, as well as investigative and
enforcement actions "often involves a complicated balancing
of a number of factors which are peculiarly within [the
agency's] expertise." *Id*. at 831. Such factors include resource
constraints and policy priorities. *Id*. See also *United States
v. Texas*, 599 U.S. 670, 678 624 (2023) ("[T]he Executive
Branch possesses authority to decide 'how to prioritize and
how aggressively to pursue legal actions against defendants
who violate the law.' ")

In sum, because the DOJ and its employees have discretion
in deciding how to respond to complaints and what claims
to bring on behalf of the government, Frick cannot state a
claim under the Rehabilitation Act to challenge their failure
to respond to his complaints in a certain way. This case will be
dismissed, and Frick's miscellaneous motions will be denied
as moot.

ORDER

IT IS ORDERED that:

1) Plaintiff Tyler Frick's amended complaint (dkt. #20) is
DISMISSED with prejudice.

2) Plaintiff's motions for preliminary injunction (dkt.
#21), representation by protection and advocacy services
(dkt. #22), status (dkt. #24) and consolidated relief/
clarification (dkt. #25) are DENIED as moot.

**\*2** 3) The clerk of court is directed to enter judgment and
close this case.

2025 WL 1927712

**All Citations**

Slip Copy, 2025 WL 1927712

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.