**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

KAREN SAM, et al.                             )
                                              )
                      Plaintiff,              )
                                              )        Case No. 1:25-cv-50219
v.                                            )
                                              )        Judge Iain D. Johnston
CITY OF SYCAMORE, ILLINOIS, et al.,           )
                                              )        Magistrate Judge Margaret J. Schneider
                      Defendants.             )
                                              )

**DEFENDANT CITY OF SYCAMORE'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS**

NOW COMES Defendant, THE CITY OF SYCAMORE (the "City") by and through its

attorney, K. Austin Zimmer of Del Galdo Law Group, LLC, for its Reply in support of its Motion

to Dismiss and states:

**I.        Plaintiffs Lack Standing**

In rebutting their lack of standing, Plaintiffs rely upon precedent set by *Village of Arlington*

*Heights v. Metro. Housing Dev. Corp.*, and interpret the holding to provide standing where

municipal action or inaction blocks housing access. 429 U.S. 252 (1977). In *Village of Arlington*

*Heights*, a non-profit real estate developer filed suit for injunctive and declaratory relief alleging

that local authorities' refusal to rezone a tract of land from single-family to multifamily was

racially discriminatory. *Id.* Since the municipality itself exercised the decisive authority to

determine whether housing could be built, the injury to the plaintiffs in that case was directly

attributable to the government's zoning decision. *Id.*

In the instant case, both decisions, to repair the property and to evict the Plaintiffs, were

those of the property owner, not the City of Sycamore. While the City held the power to condemn

the property or fine the owner, it is speculative to assume this would have preserved Plaintiffs'

tenancy. Furthermore, the decision to reject a change in zoning in *Village of Arlington Heights* applied to a large corporation-driven condominium project that would alter not just a single property, but multitudes of housing units, unlike the singular private property at issue here. Accordingly, the discretionary enforcement choices of the City cannot be said to have caused Plaintiffs' alleged injuries, and their claims fail for lack of standing.

## II.      Plaintiffs Fail to State an FHA Retaliation Claim

Plaintiffs attempt to plead retaliation by once again conflating their landlord's alleged conduct with the City's. Reporting code violations may be "protected activity," but Plaintiffs identify no "adverse action" by the City within the meaning of § 3617. In Illinois, municipal inaction, or the alleged refusal to enforce code violations, is not actionable retaliation. *See Reyes v. Board of Education of City of Chicago*, 2019 IL App (1st) 180593, ¶ 40. "A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103. Plaintiffs' theory would transform any discretionary enforcement decision into a federal retaliation claim, contrary to statutory law and established precedent.

## III.     The ADA Does Not Apply to Plaintiff's Allegations Against the City

Plaintiffs' Title II argument fails because they do not allege denial of access to a City "service, program, or activity." Code-enforcement inspections do not guarantee tenants an enforceable right to repairs or housing. *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006) (en banc) (holding that accommodations are only required when necessary to avoid discrimination on the basis of a disability). Plaintiffs identify no facts showing they were treated differently because of disability; instead, they challenge the City's discretionary decision

not to pursue enforcement of unspecified ADA accommodations on privately owned property, which is conduct outside Title II's scope.

Furthermore, Plaintiffs still fail to allege that it was reasonable for the City, a public entity, to mandate repairs on privately owned property that it neither owns nor controls. They have not demonstrated how the requested repairs were necessary to ameliorate their daughter's disability in terms of access to public services or programs. Without such a showing, the claim fails under the ADA's failure-to-accommodate theory as well.

## IV.     Plaintiffs Fail to Allege Monell Liability

To succeed on a *Monell* claim, a plaintiff must first establish an underlying constitutional violation. Without demonstrating that their constitutional rights were violated, a *Monell* claim against a municipality cannot stand. *See Palka v. Shelton,* 623 F.3d 447, 455 (7th Cir. 2010). As established above and in the City's Motion to Dismiss, Plaintiffs have failed to establish a violation of their constitutional rights directly attributable to the conduct of the City. Accordingly, without a constitutional violation, Monell liability is not applicable to Plaintiffs claims against the city and this Count V should be dismissed.

Furthermore, Plaintiffs' citation to *Palka* is confusing and likely in error. *Palka* does not support their contention that "the Seventh Circuit recognizes deliberate inaction as a 'custom' for Monell purposes." In *Palka*, plaintiff's *Monell* claim was dismissed for failure to adequately plead a constitutional violation. *Id.* There is no mention of deliberate municipal inaction in *Palka.*

## V.     Plaintiffs Fail to Properly Plead an IIED Claim

Plaintiffs recast the City's alleged inaction as "extreme and outrageous," but fail to provide any factual underpinnings to their argument that would establish the City's lack of enforcement as such.

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Plaintiffs fail to provide facts as to the issues that made the home unsafe, how said unsafe issues affected their disabilities, and how the City's alleged failure to enforce the code violations amounted to egregious and intentional conduct. Plaintiffs fail to provide a factual causal chain that can connect the City's alleged non-enforcement to an impact on their disabilities. Further, Plaintiffs ignore that the alleged actions are not directly attributable to the City. Once again, Plaintiffs are conflating the actions of the property owner with those of the City and reciting vague boilerplate allegations along with mere conclusions in order to check the boxes on the elements of IIED. *Bianchi v. McQueen*, 58 N.E.3d 680 (Ill. App. Ct. 2016), does not alter the rule that conduct must be truly egregious and intentional. Municipal inaction in a code-enforcement context does not meet that threshold.

### VI.     Punitive Damages Concession

Plaintiffs concede punitive damages are unavailable against municipalities.

### CONCLUSION

For these reasons and those stated in its Motion to Dismiss, Defendant City of Sycamore respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,
**CITY OF SYCAMORE**

By: */s/ K. Austin Zimmer*
One of its attorneys

K. Austin Zimmer (#6276227)
Peter M. Quigley (#6344324)
Del Galdo Law Group, LLC
1441 S. Harlem Ave.
Berwyn, IL 60402
(708) 222-7000
zimmer@dlglawgroup.com
quigley@dlglawgroup.com