IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, WESTERN DIVISION

KAREN SAM and ROBERT SAM,

                    Plaintiffs,

v.

DEKALB HOUSING AUTHORITY, et al.

                    Defendants.

Case No. 3:25-CV-50219

Hon. Iain D. Johnston

**REPLY IN FURTHER SUPPORT OF HOUSING AUTHORITY OF THE COUNTY OF
DEKALB's MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant, HOUSING AUTHORITY OF THE COUNTY OF DEKALB ("HACD" or
"Defendant"), by its attorney Allie M. Burnet of Best, Vanderlaan & Harrington, submits its Reply
in Further Support of HACD's Motion to Dismiss Plaintiffs' Complaint, as follows:

**INTRODUCTION**

Plaintiffs' response brief misconstrues the cases cited therein and the arguments presented
in HACD's motion to dismiss. HACD's motion to dismiss properly demonstrates that Plaintiffs'
Complaint lacks sufficient factual allegations, even where accepted as true and from which all
reasonable inferences are drawn in Plaintiffs' favor, to plead any cognizable claim for relief.
HACD does not ask the Court to weigh any evidence. The Court need look only to Plaintiffs'
allegations to conclude that their Complaint must be dismissed. Plaintiffs mention the *McDonnell
Douglass* burden-shifting framework, but HACD's motion does not rely on nor employ this
standard. Rather, Plaintiffs fail to allege the necessary factual matter to state a plausible disability-
discrimination, retaliation, constitutional, and/or state-law tort claim. Because Plaintiffs' response
brief fails to present any basis for denial of HACD's motion, the motion should be dismissed based
on Plaintiffs' failure to adequately plead any cognizable claim for relief against HACD.

1

For the reasons set forth in Defendant HACD's opening brief, as well as those set forth herein, Defendant moves this Court for dismissal of Plaintiffs' Complaint, with prejudice, as a matter of law.

## ARGUMENT

**A. Counts I–III Must Be Dismissed for Failure to State a Claim Under the Fair Housing Act, Rehabilitation Act, and Americans with Disabilities Act.**

**I.  Plaintiffs' "Direct" Disability Discrimination Claims Must be Dismissed Because Plaintiffs Fail to Allege that HACD Acted or Failed to Act *Because of* Disability.**

To adequately plead a disability discrimination claim, Plaintiffs had to allege facts suggesting that HACD stalled their portability request because of Plaintiffs' or their child's disabilities. *Wilson v. Warren Cty.*, 830 F.3d 464, 467 (7th Cir. 2016). Plaintiffs have not met this standard. Instead, Plaintiffs' Complaint alleges that HACD engaged in delays to allow Plaintiff's private landlord Melissa Mobile to bring an eviction case against them. At best, Plaintiffs allege that HACD was aware of Karen Sam's and her daughter's disabilities, but this allegation alone is not enough because it does not raise an inference that HACD would not have delayed if they were not disabled or that there is any causal relationship between their disabilities and HACD's alleged conduct (which is denied). *Id.* Plaintiffs' allegations suggest that HACD was motivated by its desire to assist the landlord rather than discriminatory animus because of Karen Sam's or her daughter's disability status. Because Plaintiffs' Complaint fails to adequately allege that HACD delayed their portability request because of disability, Plaintiffs' direct disability discrimination claims under the Fair Housing Act, the Rehabilitation Act, and the Americans with Disabilities Act in Counts I–III must be dismissed for failure to state a claim.

**II.  The FHA Retaliation Claim Must be Dismissed Because Plaintiffs Fail to Allege They Engaged in a Protected Activity.**

2

Plaintiffs have not alleged a "protected activity" as required for a cognizable retaliation claim under 42 U.S.C. § 3617 of the FHA. In the context an FHA retaliation claim, a "protected activity" means an individual's exercise or enjoyment or assistance to another person in their exercise or enjoyment of their rights under the FHA to be free from discrimination in housing based on race, color, religion, sex, familial status, national origin, or disability. *42 U.S.C. § 3617; see Riley v. City of Kokomo*, 909 F.3d 182, 192 (7th Cir. 2018) ("the FHA protects an individual's ability to report a discriminatory housing practice to a housing provider or other appropriate authority"). In their response brief, Plaintiffs point to their state-court eviction case, their assertion of their purported right to portability of their housing voucher, and their demands for "enforcement of housing protections" as sufficient to allege a protected activity. *(Pls.' Resp. Br. at 8.)* But Plaintiffs do not allege that any of these acts were related to a discriminatory housing practice prohibited by the FHA. *See Hobbs v. Goncharko*, No. 25 CV 3398, 2025 WL 2532561, at *7 (N.D. Ill. Sept. 3, 2025) (no allegation of protected activity where housing complaints were not based on discrimination). Having failed to do so, Plaintiffs have likewise failed to state an FHA retaliation claim in Count I and it must be dismissed as a matter of law.

**III.    The Failure-to-Accommodate Claim Must be Dismissed Because Plaintiffs Fail to Allege They Requested a Reasonable Accommodation that Would Have Ameliorated the Effects of Their Own or Their Daughter's Disabilities.**

Plaintiffs have failed to plausibly allege that HACD failed to reasonably accommodate Karen Sam's or their daughter's disabilities under the ADA, the Rehabilitation Act, or the FHA. As discussed more fully in Defendant's opening brief, this claim fails on its face because Plaintiffs have not even alleged that they made a request for reasonable accommodation as alleged and without alleging a request for reasonable accommodation was made, the claim stops there and must be dismissed by the court. *See, e.g., Oconomowoc Residential Programs v. City of Milwaukee,* 300 F.3d 775, 784 (7th Cir. 2002) (first issue in any such claim is whether plaintiff

3

requested an accommodation). Even if Plaintiff could allege that such a request for reasonable accommodation was made, which is denied, Plaintiffs were required (but failed) to allege that they were denied an accommodation that was "necessary to avoid discrimination *on the basis of disability.*" *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006); *see also Selyutin v. Bd. of Directors of Skokie Garden Condo. Ass'n*, No. 18 C 04572, 2019 WL 13247481, at *2–*3 (N.D. Ill. Dec. 18, 2019), *aff'd sub nom. Selyutin v. Bd. of Directors of Skokie Gardens Condo. Ass'n*, 818 F. App'x 535 (7th Cir. 2020). Plaintiffs' response argues that HACD's processing of their portability requests would have served to "stabilize housing given medical and disability need." This argument does not support a cognizable accommodation claim, however, because the alleged refusal to process portability requests does not "hurt handicapped people *by reason of their handicap*, rather than ... by virtue of what they have in common with other people, such as a limited amount of money to spend on housing." *Hemisphere Bldg. Co. v. Vill. of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999). Here, even accepting Plaintiffs' arguments, it does nothing to support any claim that the purported delay by HACD targeted disabled individuals or was a failure to reasonably accommodate any alleged disabilities (which request for accommodation was never made). Rather, HACD's alleged delay would have purportedly prevented anyone—disabled and non-disabled—from stabilizing their housing, without consideration to disability status. For the reasons set forth in Defendant HACD's opening brief, and herein, Plaintiffs have failed to plausibly allege a failure to accommodate claim in Counts II and III.

IV. **Plaintiffs' Disparate Impact Claims Must Be Dismissed Because Plaintiffs Fail to Allege Facts or Produce Statistical Evidence Demonstrating a Causal Connection Between HACD Policy and a Disparate Impact on Individuals with Disabilities.**

Plaintiffs have failed to allege facts or produce statistical evidence demonstrating a causal connection between HACD's alleged delay in processing their portability request and an alleged

disparate impact on individuals with disabilities, as is required under established Supreme Court precedent. *See Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 543 (2015). Plaintiffs' allegation of a single instance of HACD refusing to process a portability request (their own) is wholly inadequate to plausibly suggest a policy or practice of delay, much less a causal connection between HACD's alleged delays and a disparate impact on persons with disabilities. *Id.*; *see also Trimuel v. Chicago Hous. Auth.*, 695 F. Supp. 3d 972, 982 (N.D. Ill. 2023) (even with some statistical evidence, the plaintiff failed to allege a causal connection between the defendant's policy and the alleged disparate impact). Plaintiffs have failed to state a disparate impact claim under the FHA, the ADA, and the Rehabilitation Act, and this claim must be dismissed.

**V.      Counts IV and V Must be Dismissed Because Plaintiffs Fail to State a §1983 Claim.**

**A. Plaintiffs Fail to Plead a Cognizable *Monell* Claim Against HACD Because They Do Not Allege a Policy or Practice that Caused a Constitutional Violation.**

Plaintiffs fail to allege a persistent, widespread practice or pattern as necessary to adequately plead a *Monell* claim against HACD. The allegations in their complaint and response brief contain nothing more than legal conclusions and the elements of the cause of action, which "may be disregarded on a motion to dismiss." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). It is not enough for Plaintiffs to baldly assert that "HACD had customs and practices of (1) delaying portability requests in violation of HUD regulations, (2) acting in concert with landlords and attorneys to obstruct tenant rights, and (3) terminating benefits without adequate hearing or process." *(Pls. Resp. Br. at 12–13.)* Plaintiffs allege only their own singular experience, which is an insufficient basis from which to draw a reasonable inference that HACD maintains the customs and practices alleged. *See Arquero v. Dart*, 587 F. Supp. 3d 721, 730 (N.D. Ill. 2022). Plaintiffs' *Monell* claim must therefore be dismissed.

**B. Plaintiffs' §1983 Claims Must Be Dismissed Because They Are Foreclosed by the Comprehensive Remedies of the FHA, the ADA, and the Rehabilitation Act.**

Plaintiffs' § 1983 claims must be dismissed because the FHA, the ADA, and the Rehabilitation Act provide comprehensive remedial schemes to address the purported denial of Plaintiffs' housing rights by the HACD alleged in the Complaint. *See Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20 (1981); *Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016). Plaintiffs have asserted no other claims pursuant to §1983 which are properly pled, and no basis for the Court to sustain the claims as currently pled, so Plaintiffs' claims pursuant to §1983 must be dismissed as a matter of law.

**C. Alternatively, Plaintiffs' § 1983 Claims Must Be Dismissed Because They Allege Only Random and Unauthorized Action by an HACD Employee is Alleged and Plaintiffs Have Adequate State Law Remedies**

Plaintiffs have failed to state a claim against HACD under *Monell*, so this court need not consider whether the Complaint sufficiently alleges a due process violation. *Orozco v. Dart*, 64 F.4th 806, 823 (7th Cir. 2023) ("[I]t is not sufficient for him to merely demonstrate a valid due process violation. He must go a step further and show the municipality itself is liable for the harm he suffered."). In the alternative, however, Plaintiffs have also failed to allege a procedural due process violation because they rely on the random and unauthorized alleged actions of a HACD employee Alexis Moreland in delaying the processing of their portability request as the basis for the deprivation alleged. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiffs' argument in their response brief to recast Moreland's alleged actions as "foreseeable" and "systematic" *(Pls.' Resp. Br. at 14)* should be disregarded because those arguments are inconsistent with their allegations in the Complaint that Moreland's delay "violated HUD regulations requiring prompt action" *(Complaint at 4). See Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (new allegations in opposition to dismissal should not be considered if inconsistent with original

complaint). Indeed, Plaintiffs cannot amend their Complaint by way of a response brief, so any efforts to color the allegations of the Complaint by way of their response must be disregarded by the Court. *See, e.g., Pirelli v. Armstrong Tire Corp. Retiree Med. Benefits Tr. V. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (a plaintiff cannot amend the complaint through arguments asserted in their response brief).

Moreover, Plaintiffs' reliance on *Zinermon v. Burch*, 494 U.S. 113 (1990), is misplaced. In that case, the Supreme Court held that a patient sufficiently pled an unconstitutional deprivation of liberty where he alleged he was confined to a mental health treatment facility based on voluntary admissions forms he signed while medicated and suffering from a psychotic disorder, and without any determination about whether he was competent to consent to said confinement. 494 U.S. at 120, 123, 139. Contrasting *Hudson*, the Court predicated its rationale on the fact that such a deprivation of liberty was both foreseeable (because a person requiring mental health treatment understandably may be incapable of informed consent) and authorized (because it was enabled by the broad authority delegated to the state employee in question). *Id.* at 133–38.

Here, there are no allegations plausibly suggesting that HACD could have predicted that (a) one of its employee would improperly delay a specific family's portability request in violation of HUD regulations[1], (b) two different HUD employees would ignore over fifty pleas from that family for intervention, (c) a private landlord would attempt to bring an improper eviction action against that same family, (d) the town where the family's rental was located would ignore housing codes to allow the landlord to use unsafe housing as a basis for eviction, and (e) the state court would allow an illegal eviction of the family to proceed; (f) thus resulting in an alleged deprivation of Plaintiffs' property interest in their voucher. Plaintiffs have failed to allege that such a random

---

[1] Defendant HACD specifically denies that any alleged denial or delay of portability violated any regulations or laws, as alleged.

intersection of different actors, organizations, and events—nearly all of which were wholly beyond HACD's control—was somehow both foreseeable to and authorized by some act of HACD. Indeed, it is hard to think of a more random and unauthorized sequence of events. *Cf. Easter House v. Felder*, 910 F.2d 1387, 1398–1402 (7th Cir. 1990) (alleged conspiracy among government officials was random and unauthorized conduct). Intentional, unauthorized deprivations of property, like what Plaintiffs allege here, do not violate the Due Process Clause if adequate state post-deprivation remedies are available. *Hudson*, U.S. at 533. And Plaintiffs do not plead any allegations suggesting that the available state-law remedies were inadequate or that they even attempted to pursue those remedies. Plaintiffs' procedural due process claim must be dismissed.

Plaintiffs' attempt in their response brief *(Pls.' Resp. Br. at 15)* to shoehorn a new claim that they were deprived of voucher benefits "without adequate notice or hearing" should be disregarded by the Court as they fail to allege any facts to put HACD on notice of how it failed to provide them adequate notice and a hearing. *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). Moreover, this is another improper attempt to re-plead their claims by way of a response brief, which the Court is required to disregard. *Pirelli,* 631 F.3d at 448. Regardless, Plaintiffs do not allege that they did not receive notice or an opportunity for a hearing—instead, they merely formulaically state that the process was not adequate. Nor do they allege that they availed themselves of available state law remedies, including an informal hearing on termination of their voucher under federal and local regulations, or a state-law petition for a writ of certiorari for review of the termination decision. *See*, *e.g.*, *Tolliver v. Hous. Auth. Of Cty. of Cook*, 2017 IL App (1st) 153615, ¶ 19; *Landers v. Chicago Hous. Auth.*, 936 N.E.2d 735 (Ill. App. Ct. 2010). These procedures are constitutionally adequate, and Plaintiffs have not met their burden to allege otherwise. *See Doherty*, 75 F.3d 318 at 324–25 (post deprivation remedy); *Hatter v. Williams*, 844

F. App'x 870, 875 (7th Cir. 2021) (pre deprivation remedy). Their conclusory assertion by way of their response brief that the notice and opportunity for a hearing was not "adequate" is insufficient to defeat HACD's motion to dismiss their procedural due process claim for failure to state a claim. *Brooks*, 578 F.3d at 582. Likewise, Plaintiffs fail to plead a substantive due process claim as they have not pled a separate constitutional violation or the inadequacy of state-law remedies.

**VI.**     **Count VI Must Be Dismissed Because HACD Has Absolute Immunity from Plaintiffs' Tort Claims and Because Plaintiffs Nonetheless Fail to Adequately Plead an IIED Claim.**

Plaintiffs concede in their response brief that HACD generally has absolute immunity from their state-law tort claims for negligence and intentional infliction of emotional distress (IIED) under the Illinois Tort Immunity Act, which provides absolute immunity to local public entities in connection with failing to enforce any law, inspection of property other than its own, the grant or failure to gran public welfare benefits. *(Pls.' Resp. Br. at 16.) See* 745 ILCS 10/2-103, 10/2-105, and 10/2-108. Plaintiffs argue, however, that HACD's immunity does not apply if they allege intentional, willful, or wanton misconduct. *(Pls.' Resp. Br. at 16.)* Plaintiffs are mistaken. Sections 2-103, 2-105, and 2-108 of the Tort Immunity Act "do not contain an exception for willful and wanton conduct." *Pouk v. Vill. of Romeoville*, 937 N.E.2d 800, 804 (Ill. App. Ct. 2010) (applying sections 2-103 and 2-105); *cf.* 745 ILCS 10/3-108 (providing immunity in connection with local public entity's supervision of activity or use of public property except for willful and wanton conduct). The cases on which Plaintiffs rely in their response brief *(Pls. Resp. Br. at 16),* are inapposite. The Illinois Supreme Court has recognized that the exception to statutory immunity for willful and wanton misconduct which was applied in *Doe v. Calumet City*, 641 N.E.2d 498 (Ill. 1994), has been overruled. *See DeSmet ex rel. Est. of Hays v. Cty. of Rock Island*, 848 N.E.2d 1030, 1043 (Ill. 2006). Moreover, Plaintiffs misrepresent the holding of *Coleman v. East Joliet Fire Prot. Dist.*, which involved the Emergency Medical Services Systems Act and the Emergency

9

Telephone System Act, which both expressly provide an exception to immunity for willful and wanton conduct, unlike 745 ILCS 10/2-103, 10/2-105, 10/2-108. *See Coleman*, 46 N.E.3d 741, 746 (Ill. 2016).

In any event, Plaintiffs fail to plead facts sufficient to allege that HACD's conduct was truly extreme and outrageous, as required to state a claim for intentional infliction of emotional distress. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). Plaintiffs' allegations against HACD boil down to an employee allegedly delaying the processing of Plaintiffs' portability request, which later resulted in the termination of Plaintiffs' housing assistance benefits. This conduct falls short of that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Count VI for intentional infliction of emotional distress must therefore also be dismissed for failure to sufficiently plead facts supporting the same.

## VII.     Plaintiffs Concede that HACD Is Immune from Punitive Damages Brought under the Federal Civil Rights Statutes, and the Tort Immunity Act Provides Immunity from Punitive Damages.

Plaintiffs concede that HACD is immune from punitive damages brought under the federal civil rights statutes in this case *(Pls.' Resp. Br. at 19). See Newport v. Fact Concerts,* 453 U.S. 247, 271, 101 S.Ct. 2748 (1981); *Beard v. City of Chicago,* 299 F.Supp.2d 872 (N.D. Ill. 2004). Moreover, HACD is immune from punitive damages in connection with Plaintiffs' state-law claims pursuant to 745 ILCS 10/2-102, which provides no exception to that immunity. Therefore, HACD moves this Court to strike Plaintiffs' prayers for punitive damages as to all claims. Additionally, their prayers for recovery of attorney's fees too must be stricken because pro se litigants are not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432 (1991); *Smith v. DeBartoli*, 769 F.2d 451, 453 (7th Cir. 1985); *DeBold v. Stimson*, 735 F.2d 1037, 1041 (7th Cir. 1984).

10

## CONCLUSION

As to any of HACD's arguments in support of its motion to dismiss that Plaintiffs do not address in their response brief, HACD stands on its opening brief and asserts that Plaintiffs have waived argument in opposition to the same, warranting dismissal. Because Plaintiffs have failed to state a claim against Defendant HACD as to all claims, HACD is entitled to dismissal of all claims, with prejudice, as a matter of law. In the alternative, and to the extent any claims stand, Defendant moves this Court to strike the prayers for punitive damages and attorney's fees.

WHEREFORE, Defendant, HOUSING AUTHORITY OF THE COUNTY OF DEKALB, prays that this Court grants its motion to dismiss Plaintiffs' Complaint, with prejudice, strikes the prayers for punitive damages and attorney's fees, and for all other relief in its favor which this Court deems just and proper.

Respectfully submitted,

**HOUSING AUTHORITY OF THE COUNTY OF DEKALB**

/s/ Allie M. Burnet

Allie M. Burnet
**Best, Vanderlaan & Harrington**
200 N LaSalle St., Suite 2600
Chicago, IL 60601
(312) 819-1100
eservice@bestfirm.com
aburnet@bestfirm.com

11

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, state that I caused copies of the foregoing to be served, with enclosures referred to thereon, if any, by **electronic delivery through the Court's filing system** to all parties of record, at their addresses of record, on October 17, 2025.

/s/ Allie M. Burnet