UNITED STATES DISTRICT COURT
NORTHERN DISRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| KAREN SAM and ROBERT SAM, | ) | |
| Plaintiffs, | ) | Case No. 3:25-CV-50219 |
| | ) | |
| v. | ) | Hon. Iain D. Johnston |
| | ) | |
| DEKALB HOUSING AUTHORITY; | ) | Hon. Margaret J. Schneider, |
| ILLINOIS HOUSING DEVELOPMENT | ) | *Magistrate Judge* |
| AUTHORITY; TOWN OF SYCAMORE; | ) | |
| And UNITED STATES DEPARTMENT | ) | |
| OF HOUSING AND URBAN | ) | |
| DEVELOPMENT, | ) | |
| Defendants. | ) | |

**ILLINOIS HOUSING DEVELOPMENT AUTHORITY'S
12(b)(1) AND (6) MOTION TO DISMISS**

Defendant, ILLINOIS HOUSING DEVELOPMENT AUTHORITY ("IHDA"), by its undersigned counsel, James D. Major, moves this Court for dismissal of Plaintiffs' Robert and Karen Sams ("Plaintiffs" or "Sams") Complaint under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. In support of its Motion, IHDA states the following:

**INTRODUCTION**

Plaintiffs Karen and Robert Sam name IHDA in this lawsuit but make no effort to explain why. The Complaint contains no allegations explaining how IHDA participated in, directed, or was even aware of the conduct complained of. The Sams make a single perfunctory statement that IHDA had oversight authority but failed to intervene in their housing voucher portability request with the DeKalb Housing Authority ("DHA") and to enforce compliance with housing laws related to code violation orders issued by the Town of Sycamore ("Sycamore"). But, the Complaint is devoid of factual allegations to support such claims. The Sams Complaint simply groups IHDA

together with other defendants under broad collective references to "defendants" without pleading any specific facts linking IHDA to any of the alleged conduct.

As shown below, the claims in Counts I, II, III, IV, V and VI, and any money damages claims are barred and must be dismissed under the doctrine of sovereign immunity. Moreover, the Complaint fails to state any claims against IHDA. As such, all claims against IHDA should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## SUMMARY OF THE ALLEGATIONS

The Sams filed a six count Complaint against IHDA and several other Defendants, broadly alleging that Sycamore, the DHA, and their landlord facilitated a wrongful eviction by failing to enforce local housing code violations and delaying their Section 8 housing choice voucher portability request. See Complaint. The Sams name IHDA in Counts I-VI of their Complaint.

The Sams allege that they were long time participants of the Section 8 housing choice voucher program administered locally by the DHA and overseen federally by co-defendant U.S. Department of Housing and Urban Development ("HUD"). Complaint ¶ 24. They allege that Karen Sam and their daughter, a minor, are disabled. *Id*. ¶ 25. They also allege that in 2023, they successfully appealed an eviction, and the DHA was required to process a portability request so they could move to a new location in a different jurisdiction. *Id*. ¶ 26. Further, they allege that the DHA and its agents delayed processing their portability request for months, and that "emails and phone records show repeated communication by Robert Sam urging the DHA to comply…[with]…24 C.F.R.§ 982.355(C)." *Id*. ¶ 27. The Sams allege that the DHA's delay in processing their portability request was "strategic and retaliatory," and that their landlord refiled an eviction action "relying on the [DHA's] delay to assert that [the Sams] had no current voucher protection." *Id*. ¶ 28.

2

The Sams also allege that they contacted HUD repeatedly to intervene in their portability request, but that HUD took no action and their "port" request was never enforced. *Id*. ¶¶ 29, 30. They also allege that Sycamore had inspected their rental unit and identified serious repair violations and had made repair findings. *Id*. ¶ 31. Further, they allege that Sycamore refused to enforce the repair orders, that they were evicted again, and were forced to move into a hotel. *Id*. ¶ 32. They allege that HUD and its officials refused to act after being provided with court orders, medical records, and witness statements proving retaliation and procedural misconduct. *Id*. ¶ 34. Finally, they allege that they have suffered loss of their housing voucher, homelessness, severe medical decline, loss of income and emotional trauma. *Id*. ¶ 35.

## STANDARD OF REVIEW

Rule 12(b)(1) requires that an action be dismissed when the state has sovereign immunity. *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 820 (7th Cir. 2016). A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).

To survive a motion to dismiss under 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard asks for more than a "sheer possibility that a defendant has acted unlawfully." *Id*. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 678. A complaint does not suffice if it tenders "naked assertions devoid of further factual enhancement." *Id*. at 557. The factual allegations in the complaint must be enough to raise a right of relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1955).

**ARGUMENT**

**I.      Counts I-VI and All Claims for Money Damages Must be Dismissed Under the Doctrine of Sovereign Immunity**

Sovereign immunity under the Eleventh Amendment bars federal courts from hearing cases against a state or state agency unless it consents or Congress abrogates the immunity by statute. *Jones v. Cummings*, 998 F.3d 782, 786 (7th Cir. 2021). The immunity applies regardless of the relief sought, *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98 (1984), whether for damages or injunctive relief. *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520 (7th Cir. 2021). The abrogation to suit in federal court must be both "unequivocal and textual." *Dellmuth v. Muth*, 491 U.S. 223, 230 (1989). Further, state agencies or departments are considered "states" for purposes of sovereign immunity. *Kroll v. Board of Trustees of Univ. of Illinois*, 934 F.2d 904, 907 (7th Cir. 1991); *Butler v. Illinois Department of Transportation*, 533 F.Supp.2d 821, 826 (N.D. Ill. 2008). IHDA is a statutorily created public instrumentality and "body politic and corporate" of the State of Illinois, organized by 20 ILCS 3805/1 *et seq*., and functions as an arm of the State. Notably, the Seventh Circuit has recognized IHDA's legal status as an agency of the State of Illinois. *Gautreaux v. Pierce*, 690 F.2d 616, 625-626 (7th Cir. 1982).

**A.  The Complaint Failed to Show Any Exception to Eleventh Amendment Sovereign Immunity**

The Sams have not alleged that any of the exceptions to sovereign immunity apply. Initially, there is no allegation that IHDA consented to being sued in federal court under the Fair Housing Act, as alleged in Count I, or any other claims. However, Congress did not abrogate sovereign immunity in the Fair Housing Act. 42 U.S.C. § 3601 *et seq. McCardell v. U.S. Dept. of Housing and Urban Development,* 794 F.3d 510 (5th Cir. 2015) (dismissed FHA claim against the state defendants because it found there was no evidence that Congress intended to abrogate the states'

sovereign immunity.); *Thomas v. Butzen,* 2005 WL 2387676 *3 (N.D. Ill. 2005) (FHA claims dismissed against the State of Illinois as barred by sovereign immunity.). In the absence of abrogation or consent, the FHA claims in Count I are barred and should be dismissed.

Further, sovereign immunity bars claims under 42 U.S.C. §12132 *et seq.*, of the Americans with Disabilities Act ("ADA"), and 29 U.S.C. §794 *et seq.,* of the Rehabilitation Act. Initially, the ADA and Rehabilitation Act are "identical for purposes of abrogation of Eleventh Amendment Immunity…". *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000). However, Congress's abrogation of sovereign immunity under the ADA only extends to its enforcement power under Section 5 of the Fourteenth Amendment. *U.S. v. Georgia*, 546 U.S. 151, 159 (2006); *Seminole Tribe*, 517 U.S. at 58. That is, the Eleventh Amendment precludes private litigation against the states in federal court because the ADA rests on the Commerce Clause rather than the Fourteenth Amendment. *Stanley*, at 343. As such, the ADA does not enforce the Fourteenth Amendment. *Erickson v. Board of Governors of State Colleges and Universities for Northeastern Illinois University*, 207 F.3d 945, 952 (7th Cir. 2000). Accordingly, "states are entitled to Eleventh Amendment immunity for suits brought [in federal court] by individuals under the ADA." *Stevens v. Illinois Dept. of Transportation*, 210 F.3d 732,741 (7th Cir. 2000).

The Sams § 794 claim is also barred because they failed to show any link between the receipt of federal funds and any program offered by IHDA. *Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 120 (7th Cir. 1997). That is, a § 794 claim is only enforceable in federal courts against the relevant recipient of federal funds. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Here, the Sams do not allege they were denied access to an IHDA program, and do not identify or link any of IHDA's programs to the receipt of federal funds. Compl. Absent such allegations, IDHA's sovereign immunity remains intact, and the Complaint fails to establish a

jurisdictional basis for a § 794 claim. *Meyers,* 836 F.3d at 820 (7th Cir. 2016). For these reasons, Counts II and III are barred and should be dismissed.

Similarly, Congress did not abrogate immunity for Section 1983 claims against the states or state agencies. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (dismissing § 1983 claims, "we hold that neither a State nor its officials acting in their official capacities are 'persons' under §1983."); *Quick v. Illinois Department of Financial and Professional Regulation*, 468 F.Supp.3d 1001, 1009-1010 (N.D. Ill. 2020) (dismissing §1983 due process claims against the IDFPR, "the [IDFPR] is not a 'person' who can deprive a party of its rights, privileges or immunities under §1983."). As such, the Section 1983 claims raised in Count IV are barred and should be dismissed to the extent they seek money damages or injunctive relief.

Moreover, neither the Supplemental Jurisdiction Act, 28 U.S.C.A. § 1367 *et seq*., nor the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA") abrogate sovereign immunity to save the Sams state-law claims in Counts V and VI. The Supreme Court has held that Congress did not abrogate state sovereign immunity in the Supplemental Jurisdiction Act. *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 541-42 (2002). Further, the APA excludes state governments, and thus its waiver of sovereign immunity does not apply to IHDA. 5 U.S.C. § 701(b)(1). As such, the state-law tort and damages claims are barred. *Ingram v. Illinois Department of Corrections*, 2011 WL 1519623 at *2 (S.D. Ill. 2011) (dismissing state law negligence claims under Eleventh Amendment sovereign immunity.); *Offor v. Illinois Department of Human Services*, 2013 WL 170000 at *4 (N.D. Ill. 2013) (dismissing claims for intentional infliction of emotional distress, "the Eleventh Amendment prohibits a federal court from adjudicating state law claims against the state and its agencies, where, as here, it does not consent.").

Additionally, "Monell" type damages claims do not extend to the states or state agencies. *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978); *Will*, 491 U.S. at 64 (1989). Since IHDA has not consented to *Monell* liability, those claims should be dismissed.

Accordingly, this Court should dismiss Counts I, II, III, IV, V and VI of the Complaint and all claims for damages as barred by sovereign immunity under the Eleventh Amendment.

**B. Illinois State-Law Sovereign Immunity Bars Any and All Claims for Money Damages and Tort Claims**

Illinois State-law sovereign immunity bars civil suits brought in federal court alleging state-law claims. That is, the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1 *et seq* ("Immunity Act") provides that the State of Illinois "shall not be made a defendant in any court except…[in the] Court of Claims." *Harris v. State of Illinois*, 753 F.Supp.2d 734, 741 (N.D. Ill. 2010); *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2010). "The Court of Claims has exclusive jurisdiction over cases…against the State founded upon any law of the State of Illinois and all cases sounding in tort…". *Harris*, at 741. Under the Immunity Act, "the State does not waive its immunity except as provided in the [Court of Claims Act]", 705 ILCS 505/8 *et seq. Id*. The Illinois Supreme Court has stated that a waiver of the state's sovereign immunity must be "clear and unequivocal…and expressed through specific [legislation] and appear in affirmative statutory language." *In re Walker*, 546 N.E.2d 520, 522 (1989).

Here, the Sams have not shown any exceptions to the Immunity Act. Notably, nothing in the Immunity Act or Court of Claims Act states that IHDA has waived or consented to tort or damages claims in federal court. Further, the Supplemental Jurisdiction Act does not abrogate IHDA's immunity for state-law claims. *Raygor,* 534 U.S. at 541-42. As such, the Sams failed to show that the jurisdictional requirements have been met and Counts V and VI are barred. *Center for Dermatology,* 770 F.3d at 588.

II.     **Counts I-VI Should Be Dismissed Against IHDA For Failure to State a Claim.**

The Complaint fails to allege factual allegations to state any plausible claim against IHDA and accordingly Counts I-VI and should be dismissed.

### A. The Sams Fail to State an FHA Claim Against IHDA

Even if the Sams FHA claims were not barred by sovereign immunity, they still fail to state a plausible discriminatory housing claim. The FHA prohibits, "[discrimination] in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap…" 42 U.S.C. § 3604(f)(1). The FHA also makes it unlawful to, "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision facilities in connection with such dwelling, because of a handicap…" 42 U.S.C.§ 3604(f)(2).

The only claims directed against IHDA are that it failed to intervene in the Sams portability request with the DHA and to enforce Sycamore's housing code. Compl. at ¶ 16. Yet, the actual "delayed portability" allegations are directed against the DHA, Compl., at ¶ 27, and the failure to enforce code violation claims are directed against Sycamore, "[Sycamore] refused to enforce the orders." *Id*. at ¶ 31. Notably, there are no allegations that IHDA discriminated against the Sams because of a disability.

The Sams also failed to state a retaliation claim. Section 3617 of the FHA requires a plaintiff to show that (1) she is protected under the FHA, (2) she engaged in the exercise or enjoyment of fair housing rights, (3) the defendant coerced, threatened, intimidated, or interfered on account of protected activity under the FHA, and (4) intent to discriminate. *Farhan v. 2715 NMA LLC*, 723 F.Supp.3d 662, 668 (7th Cir. 2024). Far from alleging that it coerced, threatened, intimidated, or interfered with—IHDA is alleged to have "failed to intervene" in the portability request and code violation matters. Compl., at ¶ 16. However, plaintiff must show an affirmative

8

act to establish causation. *E.E.O.C. v. Chicago Miniature Lamp Works*, 947 F.2d 292, 299 (7th Cir.1991). Moreover, discriminatory intent means a subjective desire that a certain action (or non-action) will cause discriminatory results. *Id*. at 299. The Complaint is devoid of allegations that IHDA intended to discriminate in the Sams portability request or code violation matters. Accordingly, Count I should be dismissed for failure to state a plausible FHA claim.

### B. The Complaint Fails To State an ADA or Rehabilitation Act Claim

Even if the Sams claims under the ADA, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794, were not barred by sovereign immunity, they fail to state a plausible claim. To establish a violation of § 12132 and § 794, plaintiff must show (1) she is a qualified individual with a disability, (2) was denied the benefits of the services, programs, or activities of a public entity or subjected to discrimination by such an entity, and (3) the denial or discrimination was by reason of her disability. *Wagoner,* 78 F.3d at 592. Pleading claims under § 12132 and § 794 are functionally identical, however, the Rehabilitation Act includes the additional element of receipt of federal funds. *Id*. Further, a plaintiff must show intentional discrimination under § 12132 and § 794 to recover damages, *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022), yet, punitive damages are not available for such claims. *Barnes v. Gorman*, 536 U.S. 181, 189-190 (2002).

Initially, the Sams allegations arise from the Section 8 program, which, as alleged, is administered and overseen by the DHA and HUD. Compl., at ¶¶ 15, 18. The only claim against IHDA is that it "failed to intervene" in the Sams portability request with the DHA, not that it denied any benefits or engaged in discrimination in its own programs. *Id.* at ¶ 16. Even so, there is no affirmative duty on state officials to intervene in or prevent third-party conduct absent a special relationship or direct state action. *Allen v. City of Rockford*, 349 F.3d 1015, 1021 (7th Cir. 2003). Nor is there a duty to intervene or supervise under § 12132.

Additionally, the Sams have not plausibly alleged that IHDA was the recipient of federal funds. *Grzan,* 104 F.3d at 120. Section 794 prohibits discrimination by programs or activities receiving federal financial assistance, 29 U.S.C. §794 *et seq*, thus IHDA is only bound by § 794 in its own programs. *Wagoner,* 778 F.3d at 592. Here, the Sams allege that the DHA is responsible for administering the Section 8 housing voucher, not IHDA. Compl ¶ 15. Even if the funding element was adequately alleged, the Complaint pleads, at most, programmatic inaction—conduct that does not amount to intentional discrimination or deliberate indifference under § 794. *Shaw*, 52 F.4th at 334. Moreover, § 794 does not impose liability for a public entity's inaction toward third-party conduct. *Grzan,* 104 F.3d at 120 (liability under § 794 ends with the entity who directly receives the federal funds because coverage under § 794 does not follow federal aid past the intended recipient).

Furthermore, the Sams failed to show that they were denied benefits or access to a program based on disability, *Brumfield v. City of Chicago*, 735 F.3d 619, 626 (7th Cir. 2013), let alone based on failure to intervene by IHDA. Without more, the Sams fail to plausibly state an ADA or Rehabilitation Act claim, and accordingly, Counts II and III should be dismissed.

### C. The Complaint Fails to State a § 1983 Claim Due Process Violation

The Sams due process § 1983 claims are barred by sovereign immunity, *Will*, 491 U.S. 58, 65-66 (1989), but even if they were not, they still fail to state a claim. At the outset, § 1983 "authorizes suits against a person who acts under color of state law and deprives another person of his or her rights." *Quick*, 468 F.Supp. 3d at 1009-1010. However, "as a state agency protected by the Eleventh Amendment sovereign immunity, the [agency] is not a person who can deprive a party of its rights, privileges, or immunities under § 1983." *Id*. This rule extends to state officials acting in their official capacities. *Will*, 491 U.S. at 65-66. As such, the Sams § 1983 claims against IHDA

are barred because neither it nor its officials acting in their official capacities are "persons" subject to liability under § 1983. *Id*.

In addition, to state a claim for denial of procedural due process, a plaintiff must show a cognizable property interest, deprivation of that property interest, and denial of due process. *Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). Here, the Sams allege that "defendants acted under color of law to deprive them of a housing voucher without process," and "[facilitated] eviction." Compl., ¶ 51. Yet, the factual allegations explain that DHA delayed the portability request, and the Sams landlord filed a wrongful eviction case. *Id*. at ¶ 28. The Complaint fails to allege that IHDA deprived the Sams of a property interest or due process.

Further, a substantive due process claim requires a plaintiff to allege that the government violated a fundamental right or liberty. *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019). The violation must have been so "arbitrary and irrational as to shock the conscience." *Id*. The Sams do not allege a violation of a fundamental right or liberty in failing to intervene in their portability request with the DHA. Without more, unsupported labels and conclusions fail to state a plausible claim for relief meriting dismissal of Count IV. *Ashcroft*, 556 U.S. at 678.

### D. The Complaint Fails to State a Negligence Claim Against IHDA

The Sams claims for negligence and damages are barred by Eleventh Amendment and state-law sovereign immunity, *Richman,* 270 F.3d at 441, as with their claims based on "Monell" liability, which do not extend to the states or state agencies. *Monell,* 436 U.S. at 658. Even if those claims were not barred, the Sams negligence allegations are directed against the DHA and Sycamore's alleged "policies, customs, or failures in supervision." Compl. ¶ 55. Even assuming that such *Monell* liability did extend to states or state agencies, there are no allegations involving a policy, custom, or failure of IHDA that could be the source of any negligence. *Id*. Accordingly,

the allegations in Count V fail to state a plausible claim for negligence or damages against IHDA and as such should be dismissed.

### E. The Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress

The Sams intentional infliction of emotional distress ("IIED") claim is barred by Eleventh Amendment and state-law sovereign immunity. *Richman,* 270 F.3d at 441; *Offor*, 2013 WL 170000 at *4. Even so, the Sams fail to state a plausible claim against IHDA. To state an IIED claim, a plaintiff must show that (1) the defendant's conduct was extreme and outrageous, (2) intent to inflict severe emotional distress, and (3) defendants conduct did in fact cause severe emotional distress. *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017). To qualify as outrageous, the defendants conduct "must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Id*.

Simply failing to intervene in a separate agencies' review of a portability request or a housing code matter does not amount to extreme and outrageous conduct. *Id*. at 566. Assuming that IHDA was aware of the Sams portability request, Section 8 does not grant oversight or enforcement authority over separate state or federal agencies. 42 U.S.C. § 1437f. Moreover, even if IHDA was aware of the Sams housing code violations, Sycamore housing code enforcement is delegated to local code enforcement officers. Sycamore, Ill., Code of Ordinances, § 9-4-1. Accordingly, the Sams failed to state a plausible IIED claim against IHDA.

### CONCLUSION

**WHEREFORE**, based on the above reasons, Defendant, Illinois Housing Development Authority, respectfully prays that this Honorable Court grant its Motion to Dismiss and for any other relief it deems just and equitable.

Respectfully submitted,
ILLINOIS HOUSING DEVELOPMENT AUTHORITY


_____*/s/ James D. Major*_____


James D. Major (#6295217)
Illinois Housing Development Authority
111 East Wacker Drive, Suite 1000
Chicago, IL 60601
(312) 836-5200
JMajor@ihda.org
Ihdalegal@ihda.org

## CERTIFICATE OF SERVICE

The undersigned certifies, in accordance with Fed. R. Civ. 5, that copies of the foregoing were served, with enclosures referred to therein, if any, by electronic delivery through the Court's filing system to all parties of record, at their addresses of record, on October 21, 2025.

James D. Major
Illinois Housing Development Authority
111 East Wacker Drive, Suite 1000
Chicago, IL 60601
(312) 836-5200
JMajor@ihda.org
Ihdalegal@ihda.org

14