## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| KAREN SAM & ROBERT SAM, | Case No. 3:25-cv-50219 |
| Plaintiffs, | |
| v. | Honorable Iain D. Johnston |
| DEKALB HOUSING AUTHORITY, et al. | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

The Housing Authority of the County of Dekalb (HACD), the United States Department of Housing and Urban Development (HUD), and the City of Sycamore, Illinois have each moved to dismiss this action under Fed. R. Civ. P. 12(b)(6). Dkts. 30, 36, 39. For the following reasons, the motions are granted and the complaint is dismissed without prejudice.

### I.    Background[1]

Plaintiffs Karen Sam and Robert Sam brought this action against Defendants HACD, HUD, and the City of Sycamore. Complaint [1] at ¶¶ 15, 17-18. The Sams' minor daughter, H.S., was initially a party, but the Court dismissed her without prejudice because her parents, who elected to pursue this matter *pro se*, cannot represent her. Dkt. 11. The Sams initially also named the Illinois Housing

---

[1] These facts are taken from the Complaint [1] which was submitted in duplicate after intradistrict transfer [14]. The Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

Development Authority as a defendant, but then voluntarily dismissed it as a party. Complaint [1] at ¶ 16; Dkt. 57.

The Sams allege that they participated in the Housing Choice Voucher Program, administered by HACD and overseen by HUD. Complaint [1] at ¶ 24. The Sams, who resided in Sycamore, Illinois with their disabled minor daughter H.S., allege they were wrongfully evicted in 2023, which they successfully overturned via judicial process. *Id*. at ¶¶ 25-26, 31. The Sams allege their home needed serious repair for the health and safety of both H.S. and Ms. Sam, who is also disabled. *Id*. at ¶¶ 25, 31. The City of Sycamore acknowledged the need for repair during an inspection but failed to enforce its orders of repair against the Sams' landlord, nonparty Melissa Mobile. *Id*. at ¶¶ 24, 31. At that point, the Sams requested to port their housing voucher to a safer home in another jurisdiction. *Id*. at ¶ 26. Despite this request, HACD employees delayed processing the request while a second eviction proceeding occurred. *Id*. at ¶¶ 27-28. HUD was made aware of the delays but did not intervene. *Id*. at ¶ 29. The Sams were ultimately successfully evicted, leading to loss of their voucher, ongoing homelessness, loss of income, physical and mental anguish, and the attempted deprivation of their parental rights. *Id*. at ¶¶ 32, 35. This second eviction occurred without legal justification or a final court order. *Id*. at ¶ 32.

As a result, the Sams allege: (i) violations of the Fair Housing Act, 42 U.S.C. § 3601, et seq. against all defendants; (ii) violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 against Defendants HACD and HUD; (iii)

violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 against all defendants; (iv) violations of constitutionally protected due process under 42 U.S.C. § 1983 against all defendants; (v) negligence and deliberate indifference under a *Monell* theory of liability against all HACD and the City of Sycamore; and (vi) intentional infliction of emotional distress at common law against all defendants. Complaint [1] at ¶¶ 36-63. The Sams seek $7 million in compensatory and punitive damages. *Id*. at ¶ 7.

## II. Legal Standard

Federal Rule of Civil Procedure 8 requires only that a complaint contains a short and plain statement establishing the basis for the claim and the Court's jurisdiction, as well as a prayer for the relief sought. Fed. R. Civ. P. 8(a). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is proper when "the allegations ..., however true, could not raise a claim of entitlement to relief." *Id*. at 558. The Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). The Court may also consider exhibits attached to the complaint and documents other than the complaint "when they are referenced in the complaint and central to the plaintiff's

3

claim." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n. 1 (7th Cir. 2013). The moving party

bears the burden of establishing the insufficiency of the plaintiff's allegations.

*Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). Actions brought *pro se* are

construed liberally. *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987);

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III.    Analysis

> i.    *Counts I, II, & III – Violations of the Fair Housing Act, 42 U.S.C. §
> 3601, et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and
> Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.*

The Sams allege that Defendants "refused to process a port request in

violation of federal law; evicted a medically fragile family without valid cause,

ignored dangerous housing conditions, exposing the family to health risks, and

attempted to interfere with family integrity and custody." Complaint [1] at ¶ 38.

They further allege that Defendants failed to provide reasonable accommodations

and failed to enforce safety codes. *Id*. at ¶¶ 44, 48.

As a starting point, neither the eviction nor the alleged involvement of the

Department of Children and Family Services (DCFS) have been sufficiently

connected to the named Defendants. Ms. Mobile is not a named defendant, nor is

she an agent for a named defendant. None of the defendants are liable for the

actions of Ms. Mobile.

Fair Housing Act, Rehabilitation Act, and the Americans with Disabilities

Act each treat discrimination similarly. *Valencia v. City of Springfield, Ill.*, 883 F.3d

959, 967 (7th Cir. 2018). A plaintiff may prove a violation of any of the three

statutes by showing: "(1) disparate treatment; (2) disparate impact; or (3) a refusal to make a reasonable accommodation." *Id.*

It is unclear on the face of the complaint whether the Sams plead disparate treatment (i.e., intentional discrimination) or disparate impact (i.e., discrimination by practice or policy), or if they possibly intended to plead both. The complaint references both "discriminatory impact" and "direct discrimination." However, the complaint fails to state a claim using either theory.

Disparate treatment requires allegations that the defendant had a discriminatory intent or motive. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The Sams do not adequately plead a disparate treatment claim. Although the Sams allege that the delays in processing the port were intentional and retaliatory (though for what is not clear—the eviction was between the Sams and a nonparty), they provide no basis for an inference that the delay was *intended* to be discriminatory or motivated by a discriminatory intent. Rather, on the face of the complaint, the port just never occurred, despite dozens of emails being sent by Mr. Sam. There is no basis for a disparate treatment claim based solely upon mere delay.

Likewise, the complaint fails to establish a claim for disparate impact. Disparate impact claims require allegations that a defendant's practices have a "disproportionately adverse effect" on the protected class "and are otherwise unjustified by a legitimate rationale." *Trimuel v. Chicago Hous. Auth.*, 695 F.Supp.3d 972, 982 (N.D. Ill. 2023) (quoting *Tex. Dep't. of Hous. & Cmty. Affairs v.*

5

*Inclusive Cmtys. Project, Inc.*, 579 U.S. 519, 524 (2015)). "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Inclusive Cmtys. Project*, 576 U.S. at 543.

The Sams have neither produced statistical evidence nor demonstrated a causal connection between the length of time taken by HACD (or HUD, by any extension) to fulfill a request to port a waiver and disparate impact on a protected class. Although the Sams have complained of what appears to be a bureaucratic nightmare, they have not sufficiently pled either discriminatory impact or intent.

As it pertains to the City of Sycamore, the complaint likewise does not allege any basis for either intentional discrimination or disparate impact. Rather, the complaint alleges that Sycamore completed an inspection, issues were identified with the property, and they were not rectified in a timely fashion by the nonparty landlord. Sycamore declining to bring an enforcement against the landlord is not sufficient in and of itself to bring a claim, absent discriminatory intent or impact.

Finally, the Sams fail to state a claim based on reasonable accommodation. To succeed on a reasonable accommodation theory, a plaintiff must allege (1) that the requested accommodation is reasonable, and (2) that the accommodation is 'necessary to ameliorate the effect of the plaintiff's disability so that she may compete equally with the non-disabled in the housing market.'" *Trimuel*, 695 F.Supp.3d at 979 (internal citations omitted).

6

The Sams don't do so. Indeed, they make no suggestion at all as to what reasonable accommodations could have prevented their eviction. Moreover, they do not lay any connection between their disabilities—described only as "multiple chronic medical conditions"—and the alleged wrong, namely the delay in processing the port and/or the non-enforcement (or delayed enforcement) of the housing code. To the extent the delay impacted the Sams as a class of being imminently homeless—rather than their class of being physically disabled—this is not a protected class from discrimination.

For these reasons, counts (i), (ii), and (iii) are dismissed without prejudice for failure to state a claim.

ii.    *Count IV – Violations of Due Process, 42 U.S.C § 1983*

Next, the Sams allege violations of constitutionally protected procedural and substantive due process interests against all defendants, under the Fourteenth Amendment to the United States Constitution. Complaint [1] at ¶¶ 50-53; U.S. Const. amend. XIV.

The substantive due process claim is easily dispensed. The scope of the substantive due process doctrine is extremely limited; alleged deprivation of a state-created property interest, without alleging a violation of some other substantive constitutional right, is insufficient to state a substantive due process claim. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (quoting *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997)). The Sams have not alleged a violation of any fundamental constitutional right; rather, they have only alleged a loss of their

housing. This is insufficient to state a claim for deprivation of substantive due process.

To state a claim under 42 U.S.C. § 1983 for a deprivation of procedural due process, a plaintiff must allege that the defendant, while acting under color of state law, "(1) depriv[ed] a protected interest, and (2) [provided] insufficient procedural protections around that deprivation." *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) (citing *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008)).

Although there is a property interest in voucher-based housing and it is sufficiently pled that the Sams lost a protected interest in their housing, the nexus between HUD or the City of Sycamore and the loss of that housing is insufficiently pled. Simply, the alleged deprivations were not committed by them. The Sams do not allege that HUD caused them to lose their housing. Rather, Ms. Mobile evicted them and HADC failed to expeditiously port the Sams housing waiver to another jurisdiction. Neither HUD being "responsible for overseeing compliance with the Housing Act, ADA, and Fair Housing Act," nor the Sams routine calls to HUD, work to extend HADC's alleged shortcomings to HUD. Complaint [1] at ¶ 18. Likewise, it was not Sycamore that deprived the Sams of a home that complied with the housing code. Rather, Ms. Mobile did so when she failed to maintain the home to standards.

As it relates to HADC, suit against a local government unit requires either written policy or widespread practices establishing an official policy or custom of the alleged wrong. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694

8

(1978). State employees acting in a "random and unauthorized" fashion does not establish a claim for due process violations. The Sams have not sufficiently pled, beyond a threadbare recitation, that there is any official policy or custom depriving them of their right to due process. Indeed, they argue that in delaying the port request, HADC employee Alexis Moreland was "retaliatory." Complaint [1] at ¶¶ 27-28. This belies any claim of official policy or custom, and instead goes towards the delay being individualized, counter to the requirements of a suit under *Monell*.

So, count (iv) is dismissed without prejudice for failure to state a claim.

### iii.    Count V – <u>Monell</u> Negligence and Deliberate Indifference

Turning to Count V, the Sams themselves utilize *Monell* to argue that HADC and the City of Sycamore "had policies, customs, or failures in supervision that led to the harm alleged." Complaint [1] at ¶ 55. This threadbare reference is the extent of discussion in the complaint about policy or custom.

A *Monell* claim cannot be based upon a single incident, unless additional context supports a reasonable inference of a widespread practice. *White v. City of Chicago*, 829 F.3d 837, 843-44 (7th Cir. 2016). Here, even construing the *pro se* complaint liberally, there is no factual content whatsoever that plausibly suggests an unconstitutional or unlawful widespread practice. For reasons described above, the Sams undercut their own argument related to HADC. Furthermore, it is not even pled how much time passed between Sycamore's housing inspection and the Sams eviction for the Court to even attempt to surmise whether their practices in housing code enforcement could plausibly be widespread. A week would be

9

insufficient for Ms. Mobile to even correct any issues. Two years may be indicative of something suspicious afoot. But the Court does not know and will not guess.

Count (v) is dismissed without prejudice for failure to state a claim.

iv.    *Count VI – Intentional Infliction of Emotional Distress*

Finally, the Sams allege that the defendants engaged in conduct amounting to intentional infliction of emotional distress. Complaint [1] at ¶ 60-63.

To establish a claim for IIED, the Sams must show that (1) the defendants conduct was extreme and outrageous, (2) that the defendant intended to cause emotional distress or acted with reckless disregard, and (3) that severe emotional distress resulted from the conduct. *Bianchi v. McQueen*, 58 N.E.3d 680, 699 (IL App. 2016). In Illinois, this requires the conduct go "beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (internal citations omitted).

The Sams have not sufficiently pled this against any of the defendants. Again, they pled a bureaucratic nightmare that tragically resulted in the loss of their housing. However unsuccessful calls, ignored emails, and slow governmental processes are merely "indignities, … annoyances, petty oppressions, or other trivialities," insufficient to state a claim for IIED. *Id*. (quoting *McGarth v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (adopting Restatement (Second) of Torts § 46, comment d, at 73 (1965)).

Count (vi) is dismissed without prejudice for failure to state a claim.

**v.    Conclusion**

For the above reasons, the motions to dismiss [30, 36, and 39] are granted and the complaint is dismissed without prejudice. The Sams are given until February 6, 2026, to file an amended complaint that states a claim. If no amended complaint is filed by that date, the action will be dismissed with prejudice.

Entered: January 8, 2026

By: _____

Iain D. Johnston
U.S. District Judge