**BC**

# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

**KAREN SAM and ROBERT SAM, individually and on behalf of H.S., a minor,**
Plaintiffs,

v.

**FILED**
**2/1/2026**
**CVK**
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**DEKALB HOUSING AUTHORITY,**
**TOWN OF SYCAMORE, and**
**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,**
Defendants.

Case No. 3:25-cv-50219

# AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

# I. INTRODUCTION

1. This case arises from Defendants' refusal to process a lawful housing voucher portability request, denial of required grievance procedures, failure to enforce known housing safety violations affecting a disabled family, and HUD's failure to act after receiving notice, which together caused Plaintiffs to lose their housing assistance, become evicted and suffer severe

**EXHIBIT**

**A**

medical, emotional, and financial harm. The plaintiffs would like to thank the court for opportunity to try to be heard in this matter.

## II. PARTIES

2. Plaintiff Karen Sam is a disabled individual participating in the Section 8 Housing Choice Voucher Program.

3. Plaintiff Robert Sam is her husband and the legal guardian and full-time caregiver of their disabled minor daughter, H.S.

4. Plaintiff H.S. is a minor child with serious medical conditions requiring stable and safe housing.

5. Defendant DeKalb Housing Authority ("DHA") administers the Housing Choice Voucher Program in DeKalb County.

6. Defendant Town of Sycamore ("Sycamore") is a municipal entity responsible for housing inspections and enforcement of the International Property Maintenance Code.

7. Defendant U.S. Department of Housing and Urban Development ("HUD") is the federal agency responsible for oversight and enforcement of federal

housing programs and compliance with the Housing Act, ADA, and Rehabilitation Act.

# III. JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 1331.

9. Plaintiffs bring claims under:

   - 42 U.S.C. § 1983

   - Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

   - Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132

10. Venue is proper under 28 U.S.C. § 1391(b).

# IV. FACTUAL ALLEGATIONS

## A. Appeal Victory and Portability Request

11. In late 2022-2023, Plaintiffs prevailed on appeal in a prior eviction matter.

12. After the appeal victory and dismissal of the second eviction case, Plaintiffs immediately requested that DHA process a **voucher portability transfer** so they could relocate to safer housing.

13. This request was made in or about **January– February 2023**.

14. Federal regulations and the Housing Assistance Payments ("HAP") contract require housing authorities to process portability requests and to provide **grievance hearings** before denying benefits for alleged program violations. Also the HAP contract clearly states that any bad standings need to be stated in a program violation letter.

15. DHA refused to process Plaintiffs' portability request, asserting that Plaintiffs were in "bad standing" with the landlord.

16. DHA did **not** issue any program violation notice.

17. DHA did **not** provide Plaintiffs a grievance hearing.

18. DHA did **not** provide any written determination or opportunity to contest the denial, despite Plaintiffs' repeated written requests for a hearing.

19. Despite claiming Plaintiffs were in "bad standing," DHA **continued paying housing assistance to landlord Melissa Mobile** during this same period.

20. Plaintiffs allege DHA denied portability without following the procedures required by the HAP contract, federal regulations, or due process.

## B. Unsafe Housing Conditions and Town of Sycamore Inspections

21. While DHA refused to process portability, Plaintiffs remained in housing with serious health and safety hazards.

22. At Plaintiffs' request, the Town of Sycamore inspected the residence located at **639 Stonegate Drive, Sycamore, Illinois**.

23. In written inspection letters authored by John Sauter, Director of Community Development, Sycamore identified multiple code violations, including:

a. **Water heater failures**, providing hot water for only two minutes and failing to supply hot water to showers, in violation of IPMC § 505.4;

b. **Weather penetration**, including rainwater entering through front windows, front wall, and basement demising wall, with visible water intrusion on windowsills and interior walls, in violation of IPMC §§ 304.2 and 304.6;

c. **Foundation defects**, including foundation systems not properly supported, not plumb, with open cracks and breaks, incapable of supporting nominal loads;

d. **Structural instability**, including a compromised front porch due to settling foundation support, in violation of IPMC §§ 304.1 and 304.1.1;

e. **Roof defects**, including roofing components admitting rain and inadequate drainage;

f. **Interior safety hazards**, including leaking windows, basement water intrusion, disconnected heat ducts, broken garage door springs, unsafe stairs/porch posts, and large gaps in the front door.

24. Sycamore formally advised that these conditions posed risks to public health, safety, and welfare and required prompt correction.

25. Despite these findings, Sycamore did not compel timely remediation or require the landlord to correct the violations before Plaintiffs were displaced.

26. Sycamore's failure to enforce the documented code violations was not an isolated oversight, but was the result of a municipal practice, custom, or decision by final policymakers within the Town's Community Development Department. Despite formal inspection findings identifying conditions that posed risks to health and safety—particularly to a household known by Sycamore to include disabled occupants—Sycamore chose not to require timely correction, did not issue meaningful enforcement orders, and did not take steps to prevent displacement. This non-enforcement constituted an arbitrary departure from Sycamore's ordinary inspection and enforcement role and reflected a municipal policy or custom of tolerating hazardous conditions when

enforcement would protect vulnerable tenants rather than landlords.

## C. HUD Notice and Failure to Act

26. Plaintiffs repeatedly notified HUD, including HUD regional officials and the Office of the Secretary, of:

a. DHA's refusal to process portability;
b. The denial of any grievance hearing;
c. The ongoing unsafe housing conditions documented by Sycamore;
d. The medical risks to a disabled household.

27. Plaintiffs sent multiple emails and communications to HUD over several months.

28. HUD did **not** respond.

29. HUD did **not** initiate compliance review.

30. HUD did **not** require DHA to provide a grievance hearing or process portability.

31. Plaintiffs allege HUD failed to act despite notice of ongoing violations affecting a disabled family.

## D. Displacement and Harm

32. While portability remained denied and unsafe conditions persisted, Plaintiffs were again subjected to eviction proceedings.

33. Plaintiffs were displaced from their home and lost housing stability.

34. Plaintiffs suffered:

a. Loss of housing assistance;
b. Temporary homelessness and instability;
c. Medical deterioration of Karen Sam and H.S.;
d. Emotional distress;
e. Out-of-pocket expenses for storage, lodging, and relocation.

# V. CLAIMS FOR RELIEF

# COUNT I — 42 U.S.C. § 1983 (FOURTEENTH AMENDMENT DUE PROCESS)

**(Against DeKalb Housing Authority)**

35. Plaintiffs had a protected property interest in continued participation in the Housing Choice Voucher Program and in portability procedures required by federal law and the HAP contract.

36. DHA deprived Plaintiffs of that interest by denying portability based on alleged "bad standing" **without issuing any program violation, without any grievance hearing, and without any written determination.**

37. DHA continued paying the landlord while denying Plaintiffs portability, demonstrating arbitrary and inconsistent application of program rules.

38. DHA provided no meaningful notice or opportunity to be heard.

39. Plaintiffs were deprived of property without due process of law.

# COUNT II — REHABILITATION ACT § 504 (29 U.S.C. § 794)

**(Against DeKalb Housing Authority)**

40. Plaintiffs Karen Sam and H.S. are individuals with disabilities.

41. DHA receives federal financial assistance.

42. Plaintiffs were otherwise qualified for portability and continued voucher participation.

43. DHA denied Plaintiffs meaningful access to portability and program benefits by:

a. Refusing to process portability despite medical necessity;
b. Denying grievance procedures;
c. Allowing Plaintiffs to lose housing assistance as a result.

44. Plaintiffs were denied benefits by reason of disability.

# COUNT III — ADA TITLE II (42 U.S.C. § 12132)

## (Against DeKalb Housing Authority)

45. DHA is a public entity.

46. Plaintiffs are qualified individuals with disabilities.

47. DHA failed to reasonably modify its procedures to avoid disability-based exclusion and displacement.

48. Plaintiffs were excluded from the benefits of public services by reason of disability.

# COUNT IV — ADA TITLE II (42 U.S.C. § 12132)

## (Against Town of Sycamore)

49. Sycamore is a public entity.

50. Plaintiffs are qualified individuals with disabilities.

51. Sycamore's inspection and enforcement functions are covered services under Title II.

52. Despite knowledge of unsafe conditions affecting a disabled household, Sycamore failed to provide equal and meaningful access to safe housing conditions and failed to reasonably accommodate Plaintiffs' disability-related need for timely enforcement and remediation.

53. Plaintiffs suffered damages.

# COUNT V — 42 U.S.C. § 1983 (FOURTEENTH AMENDMENT DUE PROCESS)

**(Against Town of Sycamore)**

54. Sycamore acted under color of state law.

55. Sycamore arbitrarily failed to enforce known code violations that directly affected Plaintiffs' ability to safely remain housed. Sycamore's actions and omissions were undertaken pursuant to the municipal practices, customs, or policymaker decisions described above, rendering the Town liable under 42 U.S.C. § 1983.

56. Plaintiffs were deprived of fair and non-arbitrary municipal processes affecting protected interests.

Failure to enforce was pursuant to municipal policy, custom, or practice Or ratified by a final policymaker (e.g., Community Development Director)

# COUNT VI — REHABILITATION ACT § 504 (29 U.S.C. § 794)

## (Against HUD)

57. HUD conducts and oversees programs subject to Section 504.

58. HUD received repeated notice of DHA's violations and unsafe conditions affecting a disabled household.

59. HUD failed to take action within a reasonable time to enforce compliance.

60. HUD subjected Plaintiffs to discrimination by reason of disability through its failure to act. Plaintiffs seek declaratory relief against HUD that its failure to enforce compliance violated Section 504.

## Supplemental Factual Allegations and Statement of Harm

The following paragraphs set forth additional factual allegations based on Plaintiffs' personal knowledge, detailing the concrete harms suffered as a direct result of Defendants' actions described above

This court made a statement that we the plaintiffs know what happened between ourselves and the defendants, this is very accurate. The attorneys representing the defendants I am afraid don't know what has happened as I do believe the defendants have not been truthful.

We have been evicted, lost our only means to afford housing and now my family is not in a safe environment. Because of this illegal eviction that took place, we lost our car, our property and my wife and daughter are not in safe conditions. We can't afford where we are at as we have no means to afford the rent, so another eviction is on the horizon.

My wife and daughters meds are about 25k per month and Medicaid was the only insurance that would cover my wife's Hyquvia. Being on Medicaid a family of three is only allowed to make 2800.00 a month or we lose the insurance. So I was put in a position where I had to pick between making money or keeping my family alive, I chose keeping them alive, my punishment is not being able to survive or make money.That said, the Dekalb housing authority, the town of sycamore and HUD should have not only protected my family but ported us so we would not have suffered for years.

Based on a unproven allegation by the landlord, Dekalb denied our port, but kept paying mobile. All these problems, court cases, lawsuits, evictions could have been

avoided if we where just allowed to leave and be ported back in 2023. Our daughter lost two years of high school as the school denied attendance because the landlord told them our lease expired and it didn't.   The port request and denial had nothing to do with any denial by me of letting any inspection happen. That issue that was raised didn't happen until 2025 and  that was also a lie by the defendants, a lie directly to this court that I can prove was a lie all along. I have the proof of everything I have ever said in my complaints, I do not lie and have never lied to this court about anything. I have proof the eviction was illegal even the chief judge said it was when I was in chambers with him. But in my opinion because a lawyer may have  knew the judge he got us evicted. I have solid evidence of all of this and nothing matters. Why? 145 emails from the chief judge showing how we where wrongly treated and that does not matter, Why?

We probably won't make it to a trial or win this case as we are at a major disadvantage, but, I am proud of myself for fighting for my family and maybe things will be different for the next family that deals with these defendants. People look to the courts for help and fairness so they can be heard. None of that has really happened for us, our rights have been trampled our freedoms basically taken away. Justice for all does not seem to apply to us and to many others who can't afford a high profile lawyer. People like us who by no fault of there's who maybe due

to medical lost everything, don't get treated fairly I am hopeful at some point we will.

# VI. DAMAGES

61.Plaintiffs suffered damages including:

a. Loss of housing assistance and stability;
b. Medical deterioration and interruption of care;
c. Emotional distress;
d. Out-of-pocket expenses;
e. Loss of educational stability and safety for H.S.

# VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

A. Compensatory damages against DeKalb Housing Authority and the Town of Sycamore; and declaratory relief against HUD

B. B. Declaratory judgment that Defendants violated Plaintiffs' rights under federal law;
C. Costs of suit and reasonable attorney's fees under 42 U.S.C. § 1988;
D. Such other relief as the Court deems just and proper.

**(Plaintiffs seek declaratory relief only and not monetary damages against HUD)**

# VIII. JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

**/S/Karen Sam, Pro Se**
/S/**Robert Sam, Pro Se**

**harpees5@yahoo.com**

**01/21/26**