**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| KAREN SAM, et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:25-cv-50219 |
| v. | ) | |
| | ) | Judge Iain D. Johnston |
| CITY OF SYCAMORE, ILLINOIS, et al., | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Defendants. | ) | |
| | ) | |

**DEFENDANT CITY OF SYCAMORE'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

NOW COMES Defendant, THE CITY OF SYCAMORE (the "City") by and through its

attorney, K. Austin Zimmer of Del Galdo Law Group, LLC, for its Reply in support of its Motion

to Dismiss Plaintiffs' Amended Complaint and states:

**I.      Plaintiffs Lack Standing Because the Alleged Injury is Not Traceable to
         Defendant's Conduct**

In rebutting their lack of standing, Plaintiffs cite *Reed v. Village of Shorewood,* 704 F.2d

943, 948 (7th Cir. 1983), for the proposition that "the Seventh Circuit has recognized that

municipal conduct contributing to unsafe housing conditions and deprivation of protected rights

satisfies standing requirements." (Doc. 75, at 2). Plaintiff's reliance on *Reed* appears to be in error.

*Reed* held that plaintiffs stated a viable § 1983 claim where municipal officials allegedly

engaged in a sustained campaign of harassment, including baseless arrests, sham enforcement

actions, and repeated attempts to revoke or avoid renewal of a liquor license, that effectively

destroyed the value of the plaintiffs' business, even though the license was never formally revoked.

704 F.2d at 948. The Seventh Circuit explained that a deprivation of property under the Fourteenth

Amendment can occur when the government interferes with the use and enjoyment of property to

Page **1** of **6**

the point of rendering it worthless, not just when it formally extinguishes title. 704 F.2d at 948. Unlike *Reed*, which involved a targeted campaign of affirmative municipal harassment that allegedly destroyed a specific property interest, Plaintiff alleges only that the Defendant identified code violations on private property and failed to enforce them. Such passive inaction is plainly distinguishable from the direct, coercive conduct at issue in *Reed*. Thus, Plaintiff's reliance on *Reed* is in error as *Reed* does not address standing at all; it merely holds that sustained governmental harassment can constitute a deprivation of a protected property interest even absent formal revocation. 704 F.2d at 948.

Plaintiff lends no further substance to their original allegations that their alleged injuries are traceable to the Defendant's conduct. As stated in Defendant's motion (Doc. 69, at 3), Illinois courts have long held that "there is no common law duty to members of the general public for a municipality's failure to enforce an ordinance." *Lakeside Condo. C Ass'n v. Frediani Developers, Inc.*, 135 Ill. App. 3d 972, 973 (1st Dist. 1985). As the Illinois Supreme Court has explained, building codes and inspections "are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes." *Hoffert v. Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220, 223 (1972), quoted in *Ferentchak v. Village of Frankfort*, 105 Ill. 2d 474, 485 (1985). "A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103.

## II.     Plaintiffs Fail to State a Viable Claim Under the ADA (Count IV)

Plaintiffs' claim under Title II of the ADA fails for two independent reasons. First, Title II does not impose liability absent a denial of access to a public service, program, or activity by reason of disability. Plaintiffs do not allege that they were excluded from, or denied participation

in, any municipal service on account of their disability status. Rather, they contend that the City failed to take additional enforcement action with respect to a privately owned residence. That is not a cognizable theory under Title II.

Second, even if Title II were implicated, Plaintiffs again fail to state a viable failure-to-accommodate claim. To prevail on such a theory, Plaintiffs must plausibly allege that they requested a reasonable modification that was necessary to afford them meaningful access to a public service, and that the public entity refused to provide it. See *Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006).

Here, Plaintiffs do not identify any specific accommodation request directed to a municipal service. At most, they allege that the City should have undertaken additional enforcement action to compel repairs to a privately owned property. But Plaintiffs have not shown that such a request would be reasonable, particularly where the City does not own or control the property and where enforcement decisions are inherently discretionary. Nor have Plaintiffs alleged that such action was necessary to provide them access to any City service, program, or activity, as opposed to improving the condition of the residence itself. "[A]n accommodation only is required when *necessary* to avoid discrimination *on the basis of* a disability." *Wisconsin Cmty. Servs., Inc.*, 465 F.3d at 751.

In short, Plaintiffs attempt to recast an alleged failure to enforce local codes as disability discrimination. Title II does not impose a general duty on municipalities to remedy unsafe conditions on private property, nor does it require public entities to take affirmative enforcement action to protect individuals from third-party conditions. Because Plaintiffs fail to allege a denial of meaningful access or a reasonable, necessary accommodation tied to a public service, Count IV fails as a matter of law and should be dismissed with prejudice.

## I.  Plaintiffs May Not Amend Their § 1983 Facts Through Their Response Brief

Plaintiffs attempt to introduce new factual allegations as to their § 1983 claim based upon a document not included in the Amended Complaint, namely a letter sent to Plaintiffs by the City's Attorney. Defendant attaches the letter referenced by Plaintiffs solely because Plaintiffs rely on it in their response, and in the interest of judicial economy. Defendant does not concede that the letter is properly before the Court or that it may be considered on a Rule 12(b)(6) motion. Nevertheless, even if the Court were to consider the document, it does not support Plaintiffs' claims for the reasons set forth herein.

### A.  The City Did Not Amend Any Ordinance

The letter states that "Section 105.1 of the International Property Maintenance Code ("IPMC") as adopted by Sycamore, grants authority to the code official to grant a modification from the code in individual cases whenever there are practical difficulties in carrying the provisions of the IPMC." (Ex. A, at 1). It further explains that "[t]he special circumstances here are your not so veiled threats of violence if people come to the property again and your refusal to allow entry to the property for the property owner to make necessary repairs." (*Id.*)

Despite Plaintiff's contentions that the letter indicates the City was "changing the town ordinances just on our address so that the landlord does not have to make repairs" (Doc. 75, at 3), the letter directly refutes that assertion. Mr. Sauter merely exercised the discretion that he is prescribed within the code to place a modification on the property. A provision in a code permitting modification from the code on a case-by-case basis by no means constitutes an amendment or change to the underlying code. Accordingly, Mr. Sauter did not alter any City ordinance or code in placing the modification on Plaintiff's property.

**B. A Modification Per Section 105.1 of the IPMC does not Constitute an Official Policy or Custom Befitting a Monell Claim.**

Municipal liability exists where constitutional violations result from official policy or custom. *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978). Plaintiffs cite *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), for the proposition that actions "taken by municipal officials with final policymaking authority may establish municipal liability." In *Pembaur*, the Supreme Court held that a County Prosecutor, who the Appellate Court determined could establish county policy under appropriate circumstances, was acting as the final decisionmaker for the county in the violation of plaintiff's constitutional rights, where it ordered Sheriff's Deputies to forcibly enter and serve capasises on individuals at a physician's office. 475 U.S. at 485. The Supreme Court's analysis of the law held that municipal liability under § 1983 does not arise from every decision by a municipal employee. *Id.* at 481-484. It attaches only when an official with final policymaking authority, as defined by state law, makes a deliberate policy decision on the matter at issue. *Id.* Mere discretion, even by a high-ranking official, is not enough. *Id.* Liability exists only when the action represents an official policy choice, not just the exercise of judgment. *Id.*

Section 105.1 of the IPMC, as adopted by the City, permits the code-official to make a modification from the code where impractical to carry out its provisions. (Ex. A, at 1). Thus, any modification made under this section is an exercise of discretion by the code-official given the specific difficulties present in any individual case. "The fact that a particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481-82 (citing *Oklahoma City v. Tuttle,* 471 U.S., at 822–824 (1985)). Accordingly, Mr. Sauter's modification from the code

Page **5** of **6**

does not give rise to municipal liability based on the exercise of his discretion for 639 Stonegate

Drive, and Plaintiff has failed to state a valid *Monell* claim against the City of Sycamore.

### III.   CONCLUSION

For these reasons and those stated in its Motion to Dismiss, Defendant City of Sycamore

respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,
**CITY OF SYCAMORE**

By: */s/ K. Austin Zimmer*
One of its attorneys

K. Austin Zimmer (#6276227)
Peter M. Quigley (#6344324)
Del Galdo Law Group, LLC
1441 S. Harlem Ave.
Berwyn, IL 60402
(708) 222-7000
zimmer@dlglawgroup.com
quigley@dlglawgroup.com