

BC

FILED
4/6/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MAN

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION

**KAREN SAM and ROBERT SAM,**
Plaintiffs,

v.

**DEKALB HOUSING AUTHORITY, et al.,**
Defendants.

Case No. 3:25-cv-50219
Hon. Iain D. Johnston

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEKALB HOUSING AUTHORITY'S MOTION TO DISMISS

Plaintiffs Karen Sam and Robert Sam, pro se, respectfully submit this Response in Opposition to Defendant Housing Authority of the County of DeKalb's Motion to Dismiss.

## INTRODUCTION

Defendant's motion attempts to recast Plaintiffs' claims as nothing more than a dispute over internal HUD regulations or an isolated mistake by an unidentified employee. That is not what the Amended Complaint alleges. Plaintiffs allege that DeKalb Housing Authority denied portability based on alleged "bad standing," while

never issuing a program-violation notice, never providing a written determination, never affording a grievance hearing, and yet continuing to pay housing assistance to the landlord during the same period. Accepting those allegations as true, as the Court must at this stage, Plaintiffs have plausibly alleged arbitrary governmental action, denial of procedural protections, and disability-related exclusion from a public housing benefit.

This case is not about holding HACD liable for the landlord's conduct in the abstract. It is about HACD's own conduct: refusing to process portability, refusing to provide process, and trapping Plaintiffs in unsafe housing until eviction followed. At the pleading stage, that is enough.

This case does not seek to enforce HUD regulations in isolation. Rather, it challenges the arbitrary denial of a federally funded housing benefit without notice, without hearing, and despite the housing authority's continued payment of subsidy to the landlord during the same period.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept well-pleaded factual allegations as true and draw

reasonable inferences in Plaintiffs' favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A pro se pleading must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Dismissal is inappropriate where the complaint alleges facts that, if proven, would establish a violation of federal law. At this stage, Plaintiffs are not required to prove their claims; they need only plausibly allege them.

**ARGUMENT**

# I. COUNT I STATES A PLAUSIBLE § 1983 DUE PROCESS CLAIM

## A. Plaintiffs plausibly allege deprivation of a protected property interest

The Housing Choice Voucher program confers significant government housing benefits, and the loss or denial of continued assistance implicates due process protections. The Supreme Court has long held that when the government deprives a person of public benefits on which basic necessities depend, due process applies. *Goldberg v. Kelly*, 397 U.S. 254, 262-63 (1970). Escalera v. New York City Housing Authority

Citation:
Escalera v. New York City Housing Auth., 425 F.2d 853 (2d Cir. 1970)

Courts have specifically recognized that tenants receiving government housing assistance possess constitutionally protected interests in continued housing benefits and may not be deprived of those benefits without due process. See *Escalera v. New York City Housing Auth.*, 425 F.2d 853, 861 (2d Cir. 1970) (holding that public housing tenants are entitled to notice and an opportunity to be heard before adverse housing actions affecting their tenancy).

Plaintiffs allege that HACD denied portability based on alleged "bad standing," but never issued any program-violation notice, never gave a written determination, and never provided any grievance hearing or opportunity to contest the asserted basis for denial. Plaintiffs further allege that HACD continued paying the landlord while simultaneously denying Plaintiffs the ability to port the voucher elsewhere. Those allegations plausibly describe arbitrary deprivation of a protected housing benefit without constitutionally adequate process.

Defendant argues that Plaintiffs have not identified whether Count I sounds in procedural or substantive due process. The Amended Complaint is at minimum sufficient to state a procedural due process claim.

Plaintiffs allege that HACD made an adverse benefits-related decision affecting continued voucher use and portability, did so based on alleged "bad standing," and failed to provide any meaningful notice or opportunity to be heard. That is enough to state a procedural due process claim at the pleading stage.

## B. Plaintiffs do not seek to enforce HUD regulations directly; they invoke the Constitution

Defendant repeatedly argues that there is no private right of action to enforce HUD regulations. That misses the point.

Plaintiffs do not assert Count I merely because HACD failed to comply with HUD regulations in the abstract. Plaintiffs assert Count I because HACD deprived them of a protected housing benefit without notice, without a written determination, and without any hearing. The HUD regulations matter because they help define the process ordinarily due and underscore the arbitrariness of HACD's alleged conduct, but Count I arises under the Fourteenth Amendment and 42 U.S.C. § 1983.

That distinction is critical. A constitutional due process claim is not foreclosed merely because the same facts also involve federal housing regulations. Defendant's reliance on no-private-right-of-action arguments does not defeat a constitutional claim.

## C. The portability denial was not pleaded as a random, unauthorized mistake

Defendant next argues that the alleged denial of portability was merely the "random and unauthorized" conduct of an employee. But the Amended Complaint does not describe a one-off clerical error. It alleges repeated requests for portability, repeated reliance on alleged "bad standing," months of non-action, no written violation notice, no written decision, and no grievance hearing.

Those allegations plausibly suggest an intentional or ratified administrative decision, not a random mishap. And even a single decision can support municipal liability where it is made by an official with final authority over the subject matter. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Plaintiffs specifically allege that they sought portability not only from a caseworker but from supervisory and decision-making officials within HACD. At the pleading stage, that is sufficient to support a plausible inference that the challenged decision was made, approved, or ratified by officials with authority over portability and voucher administration.

Plaintiffs' allegations are not speculative. HACD communicated its refusal to process portability through multiple email communications stating that Plaintiffs were in "bad standing" and therefore would not be

permitted to port their voucher. These communications confirm that the denial was a deliberate administrative decision rather than an isolated clerical mistake. At the pleading stage, such allegations plausibly demonstrate an intentional decision by HACD officials responsible for voucher administration.

At minimum, Plaintiffs allege that Defendant was aware of both the disability and the need to relocate due to unsafe conditions, which is sufficient to trigger the duty to engage in an interactive process under federal disability law

## D. Plaintiffs plausibly allege Monell liability

To state a Monell claim, a plaintiff may allege that the constitutional injury was caused by an official policy, a widespread custom, or a decision by an official with final policymaking authority. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Pembaur*, 475 U.S. at 480-81.

Here, Plaintiffs have plausibly alleged at least the third path. HACD's motion incorrectly assumes Plaintiffs were required to plead a county-wide pattern involving many families. That is not the only route to Monell liability. A single decision by a final policymaker may suffice. *Pembaur*, 475 U.S. at 480. Plaintiffs allege repeated requests to HACD officials and supervisors, a substantive denial based on "bad standing," and the complete absence of formal process. Those facts permit the reasonable

inference that the denial was not merely the stray act of a low-level employee but an official benefits decision attributable to HACD itself.

At the motion-to-dismiss stage, Plaintiffs need not prove the identity of the final policymaker or attach internal agency manuals. They need only allege facts supporting a plausible inference of official decision making. They have done so.

**HACD Officials Ratified the Portability Denial**

Plaintiffs also plausibly allege municipal liability through ratification. Plaintiffs repeatedly contacted HACD officials, including supervisors and directors, requesting portability of their voucher. Rather than correcting the denial or providing a hearing, HACD officials repeatedly confirmed by email that Plaintiffs were in "bad standing" and therefore would not be permitted to port. These allegations support the reasonable inference that HACD decision-makers were aware of the portability denial and allowed it to continue.

The Supreme Court has recognized that municipal liability may arise where policymakers ratify the unconstitutional decisions of subordinates. See *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). At the pleading stage, Plaintiffs' allegations that multiple HACD officials were aware of the denial and failed to correct it plausibly support municipal liability.

## E. Defendant's "adequate state-law remedy" argument does not defeat Count I on the pleadings

Defendant also invokes cases addressing random and unauthorized deprivations for which post-deprivation state remedies may suffice. That line of cases does not warrant dismissal here for two reasons.

First, Plaintiffs do not allege a random post-deprivation loss like confiscation of personal property. They allege an administrative housing-benefits decision: HACD denied portability based on "bad standing" and failed to provide any formal notice or hearing. Where the government makes an adverse benefits decision through established administrative channels, predeprivation process matters. *Goldberg*, 397 U.S. at 264.

Second, Defendant's own theory confirms that HACD was making an eligibility or program-related judgment, not reacting to an unforeseeable rogue act. HACD says Plaintiffs were denied portability due to "bad standing." A decision of that nature is not the sort of spontaneous deprivation that excuses the absence of ordinary process.

Nor does Defendant defeat Count I by pointing to hypothetical remedies Plaintiffs might have pursued later. The issue here is whether Plaintiffs plausibly allege that

HACD denied a housing-benefits decision without the process due at the time of decision. They do.

**Khan v. Bland**

Citation:
Khan v. Bland, 630 F.3d 519 (7th Cir. 2010)

The Seventh Circuit has likewise recognized that individuals possessing a legitimate entitlement to government benefits are entitled to procedural protections before those benefits are denied or withdrawn. See *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). Plaintiffs allege that HACD denied portability and effectively deprived them of the continued use of their housing assistance without providing any written determination, notice, or hearing.

**F. Federal housing rules support the plausibility of Plaintiffs' due process theory**

HUD's portability regulations confirm that portability is an established feature of the voucher program. Under 24 C.F.R. § 982.353(b), a voucher-holder or participant family has the right, subject to specified limitations, to receive voucher assistance outside the initial PHA's jurisdiction. And under 24 C.F.R. § 982.355, a receiving PHA must administer assistance for an eligible portability move. These regulations do not prove Plaintiffs' case by themselves, but they reinforce that portability is not some

gratuitous favor; it is a recognized program mechanism subject to regulated standards.

Likewise, HUD's hearing and review regulations reflect that adverse decisions concerning applicants and participant families must be handled through defined review procedures. See 24 C.F.R. §§ 982.554, 982.555. Plaintiffs allege that HACD gave them none of that process. That allegation is enough to proceed past Rule 12(b)(6).

## G. Count I should not be dismissed

Count I plausibly alleges that HACD denied portability based on alleged "bad standing," failed to issue any formal violation notice, failed to provide a written determination, failed to afford any grievance hearing, and continued paying the landlord while trapping Plaintiffs in the same tenancy. Those facts, taken as true, plausibly state a claim for deprivation of a protected housing benefit without due process. Defendant's motion to dismiss Count I should therefore be denied.

## H. Federal Housing Regulations Reinforce the Need for Procedural Protections

Federal housing regulations further reinforce the importance of procedural protections when housing authorities make decisions affecting voucher participants. HUD regulations require housing authorities to provide

informal review or hearing procedures when participants challenge certain program determinations. See 24 C.F.R. §§ 982.554–982.555. While Plaintiffs' claims arise under the Constitution rather than the regulations themselves, the existence of these procedures underscores the importance of fair administrative decision-making in the voucher program.

The Supreme Court has long held that the adequacy of procedural protections depends on the interests at stake and the risk of erroneous deprivation. See *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Housing assistance affecting a family's ability to remain housed represents a significant private interest, and the risk of erroneous deprivation is substantial where a housing authority denies portability based on alleged "bad standing" without issuing a written violation notice, providing a hearing, or allowing any opportunity to challenge the determination.

## II. COUNTS II AND III STATE PLAUSIBLE CLAIMS UNDER THE REHABILITATION ACT AND ADA

Counts II and III allege that HACD violated Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act by denying Plaintiffs meaningful access to housing assistance and portability while knowing that members of the household were disabled.

Defendant argues that Plaintiffs failed to allege a reasonable accommodation request and failed to connect the denial of portability to disability. Those arguments mischaracterize the pleading requirements at this stage and ignore the factual allegations contained in the Amended Complaint.

## A. The Rehabilitation Act and ADA Apply to Housing Authorities Administering Federal Housing Programs

Section 504 of the Rehabilitation Act prohibits discrimination against otherwise qualified individuals with disabilities by any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

Similarly, Title II of the ADA provides that no qualified individual with a disability shall, by reason of that disability, be excluded from participation in or denied the benefits of services, programs, or activities of a public entity. 42 U.S.C. § 12132.

Housing authorities administering federal voucher programs fall squarely within these statutes. Courts consistently recognize that public housing authorities are subject to both statutes when administering housing assistance programs.

See:

- **Wisconsin Community Services, Inc. v. City of Milwaukee**, 465 F.3d 737, 750 (7th Cir. 2006) (en banc), holding that Title II broadly applies to public entity programs and services.

- **Good Shepherd Manor Foundation, Inc. v. City of Momence**, 323 F.3d 557, 561 (7th Cir. 2003), explaining that public entities must make reasonable accommodations in rules, policies, practices, or services when necessary to afford disabled persons equal access.

HACD does not dispute that it administers the Housing Choice Voucher program or that it receives federal funding. Accordingly, it is plainly subject to both statutes.

## B. Plaintiffs Adequately Allege Disability and Knowledge of Disability

To state a claim under either statute, Plaintiffs must plausibly allege that:

1. They are qualified individuals with disabilities.

2. Defendant knew of the disability.

3. Plaintiffs were denied the benefits of a program or service by reason of that disability or through failure to accommodate.

See **Valencia v. City of Springfield**, 883 F.3d 959, 967 (7th Cir. 2018).

The Amended Complaint satisfies those elements. Plaintiffs allege that Karen Sam and the minor child H.S. are disabled and that HACD was aware of those disabilities during the relevant time period. Plaintiffs further allege that they informed HACD of the medical necessity of relocation and the unsafe conditions of the dwelling.

At the motion-to-dismiss stage, these allegations must be accepted as true.

## C. A Formal "Accommodation Letter" Is Not Required at the Pleading Stage

Defendant's principal argument is that Plaintiffs never made a formal request for accommodation. But the Seventh Circuit has made clear that requests for accommodation need not use any specific language or formal phrasing.

The law requires only that the public entity be aware of the disability and the need for accommodation.

See **Jankowski Lee & Associates v. Cisneros**, 91 F.3d 891, 895 (7th Cir. 1996), holding that a housing provider must consider accommodation when it becomes aware of the disability and the need for adjustment in policy.

Similarly, courts recognize that accommodation requests may be informal and that the focus is on whether the provider was aware of the disability and the need for assistance.

See **Oconomowoc Residential Programs, Inc. v. City of Milwaukee**, 300 F.3d 775, 783 (7th Cir. 2002).

Here, Plaintiffs allege that HACD knew of the household's disabilities and the need to relocate due to unsafe housing conditions. Plaintiffs further allege that HACD refused to process portability despite those circumstances.

At the pleading stage, those allegations plausibly support a failure-to-accommodate claim.

## D. Plaintiffs Plausibly Allege Denial of Meaningful Access to a Housing Program

The Rehabilitation Act and ADA require public entities to provide disabled individuals with meaningful access to government programs.

See **Alexander v. Choate**, 469 U.S. 287, 301 (1985).

The Amended Complaint alleges that HACD refused to process portability while simultaneously asserting that Plaintiffs were in "bad standing," yet never issued any formal program violation or hearing. Plaintiffs further allege that HACD continued paying the landlord subsidy

during the same time period while denying Plaintiffs the ability to port the voucher to another jurisdiction.

Those allegations plausibly support the inference that HACD's actions denied Plaintiffs meaningful access to the housing assistance program.

## E. Plaintiffs Are Not Required to Prove Causation or Statistical Disparities at the Pleading Stage

Defendant also argues that Plaintiffs failed to plead disparate impact or statistical disparities. But Plaintiffs' claims are primarily based on failure to accommodate and denial of program benefits, not a statistical disparate impact theory.

The Supreme Court has repeatedly emphasized that federal pleading standards do not require plaintiffs to produce evidence or statistical proof at the motion-to-dismiss stage.

See **Swierkiewicz v. Sorema N.A.**, 534 U.S. 506, 511 (2002), holding that plaintiffs need not plead specific evidence establishing a prima facie case of discrimination.

The Seventh Circuit likewise confirms that discrimination claims may proceed where plaintiffs plausibly allege discriminatory conduct without statistical proof at the pleading stage.

See **Luevano v. Wal-Mart Stores, Inc.**, 722 F.3d 1014, 1028 (7th Cir. 2013).

Here, Plaintiffs allege that HACD knew of their disabilities, refused to process portability despite those circumstances, and denied them equal access to housing assistance. That is sufficient to proceed to discovery.

## F. Counts II and III Should Not Be Dismissed

Accepting Plaintiffs' allegations as true, HACD knew that the household included disabled individuals and nevertheless refused to process portability while denying any formal procedural protections. Plaintiffs plausibly allege that this conduct denied them meaningful access to a federally funded housing program.

Because Plaintiffs have plausibly alleged disability-based exclusion and failure to accommodate, Counts II and III should not be dismissed.

# III. PLAINTIFFS' CLAIMS ARE NOT BARRED BY HUD'S "NO PRIVATE RIGHT OF ACTION" REGULATIONS

Defendant argues that Plaintiffs' claims must be dismissed because HUD regulations governing the Housing Choice Voucher program do not create a private right of action. Defendant specifically cites 24 C.F.R. § 982.407 and

similar provisions suggesting that voucher participants cannot sue to enforce Housing Quality Standards directly.

**Dekalbs motion to dismiss**

This argument mischaracterizes Plaintiffs' claims.

Plaintiffs are **not suing to enforce HUD regulations directly**. Rather, Plaintiffs bring claims under the Constitution, the Rehabilitation Act, and the Americans with Disabilities Act. Those statutes expressly authorize private lawsuits.

The Supreme Court has repeatedly recognized that §1983 provides a remedy for violations of constitutional rights committed by state actors.

See **Monell v. Department of Social Services**, 436 U.S. 658, 690-91 (1978).

Likewise, both the Rehabilitation Act and the ADA expressly authorize private suits for discrimination.

See:

- **Barnes v. Gorman**, 536 U.S. 181, 185 (2002) (recognizing private enforcement of both the ADA and Rehabilitation Act).

- **Alexander v. Choate**, 469 U.S. 287, 299-300 (1985).

Plaintiffs' claims arise from:

1.  the denial of procedural protections required before deprivation of a housing benefit, and

2.  the denial of equal access to a federally funded housing program for disabled individuals.

Those claims arise under **federal civil rights statutes and the Constitution**, not merely HUD regulations.

HUD's regulations are relevant only as **context showing the procedures normally required in voucher administration**, and therefore demonstrating how arbitrary the alleged denial of portability was. The existence of those regulations does not bar Plaintiffs' constitutional and statutory claims.

Accordingly, Defendant's "no private right of action" argument does not justify dismissal.

## IV. DEFENDANT'S ARGUMENT REGARDING ATTORNEY'S FEES DOES NOT WARRANT DISMISSAL

Defendant also argues that Plaintiffs cannot recover attorney's fees because they are proceeding pro se.

Dekalbs motion to dismiss

It is true that pro se litigants generally cannot recover attorney's fees under fee-shifting statutes.

See **Kay v. Ehrler**, 499 U.S. 432, 435-38 (1991).

However, that issue is irrelevant to the present motion. Whether Plaintiffs may ultimately recover attorney's fees has no bearing on whether the Amended Complaint states a claim upon which relief can be granted. Courts routinely deny motions to dismiss where the only issue raised concerns the availability of fees.

If necessary, the Court may simply disregard the request for attorney's fees without dismissing any substantive claim.

Accordingly, Defendant's argument regarding attorney's fees does not support dismissal of the Complaint.

## V. DISMISSAL AT THE PLEADING STAGE WOULD BE IMPROPER

At its core, Defendant's motion attempts to resolve factual disputes and reinterpret Plaintiffs' allegations in Defendant's favor. But at the Rule 12(b)(6) stage, the Court must accept Plaintiffs' factual allegations as true and draw reasonable inferences in their favor.

See **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009).

Plaintiffs allege that:

- HACD denied portability based on alleged "bad standing,"

- HACD never issued a program violation notice,

- HACD never provided any grievance hearing,

- HACD continued paying the landlord while denying portability, and

- HACD knew that members of Plaintiffs' household were disabled.

Taken together, those allegations plausibly support claims for deprivation of due process and disability-based denial of access to a public housing program.

Discovery will determine the precise circumstances of HACD's decision making, the officials involved, and the reasons portability was denied. At the pleading stage, however, Plaintiffs have provided sufficient factual allegations to proceed.

Dismissal at this early stage would therefore be inappropriate.

**Holbrook v. Pitt**

Citation:
Holbrook v. Pitt, 643 F.2d 1261 (7th Cir. 1981)

Courts have repeatedly emphasized that federal housing programs must be administered in a fair and non-arbitrary manner. See *Holbrook v. Pitt*, 643 F.2d 1261, 1278 (7th Cir. 1981) (recognizing that the administration of federal housing programs must conform to principles of fairness and due process). Plaintiffs plausibly allege that HACD acted arbitrarily by denying portability based on alleged "bad standing" while issuing no violation notice, providing no hearing, and continuing to subsidize the landlord during the same period.

Plaintiffs repeatedly requested portability and were repeatedly told they were in "bad standing," yet HACD issued no program violation notice, provided no written determination, and afforded no grievance hearing before denying portability.

Courts have also recognized that federal housing programs must be administered in a consistent and lawful manner by local housing authorities. See *Wright v. City of Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 430 (1987). Plaintiffs do not merely allege a technical violation of HUD regulations. Rather, they allege that HACD administered the voucher program arbitrarily by repeatedly denying portability based on alleged "bad standing" while issuing no violation notice, providing no hearing, and continuing to pay the landlord subsidy during the same period. Such allegations

plausibly describe arbitrary administration of a federally funded housing program.

**Personal Statement**

We where wrongly evicted even when judge Waller said it had to me dismissed. This forced a agreed order. A agreed order we could not comply with as we had nowhere to go. This could have been avoided if we had been ported two years prior.

There was no mistake by a isolated employee at the Dekalb housing authority to deny our port request. I reached out to the director, our case manager, the entire board at least 30 times pleading to port us out, not one email or call was returned. In fact, the town of sycamores own inspector, John Sauter who came to the home and drafted pages of violations,  had a family member that works for the Dekalb housing authority and  made them aware of this whole situation by him as well. The sycamore town attorney Tim Conklin drafted us a letter informing us that in our 8 unit building, only our address was being changed for ordinances which would allow the landlord to not have to make the repairs. We where targeted, targeted by a town and county who all worked together to intentionally hurt my family to protect one of there own. This is very wrong what was done to my family and how no one helped us. I have been doing my best fighting for us to be heard, against so many and in a court system that is very difficult to maneuver in. The

facts are the facts and the evidence speaks for itself. If we would have been ported none of this would have happened. Now we face another eviction as we speak. Another eviction that could have been prevented if we had our housing vouchers. Everything I have said, I 100% told the truth and have the evidence to prove. This whole time as we suffered over and over with evictions and now another, could have all been prevented if we where just ported out of Dekalb county and we still had our vouchers. My daughter missed two years of high school over all this, she can never get that back, never. Our lives are permanent changed and ruined forever, just because we have a disabled family.

# CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Housing Authority of the County of DeKalb's Motion to Dismiss in its entirety.

Respectfully submitted,

/s/ Karen Sam
Karen Sam, Pro Se

/ s / Robert Sam
Robert Sam, Pro Se

Dated: 4/5/26